1  MICHAEL ZORKIN (Bar No. CA 313308)
   THE ZORKIN FIRM
2  E-mail: mz@thezorkinfirm.com
   6320 Canoga Ave., 15th Floor
3  Woodland Hills, California 91367
   Phone:  323.493.8075
4  Fax:    323.872.5251

5  TOGUT, SEGAL & SEGAL LLP
   Kyle J. Ortiz (NY 4818571) (*pro hac vice* pending)
6  kortiz@teamtogut.com
   Bryan M. Kotliar (NY 5178454) (*pro hac vice* pending)
7  bkotliar@teamtogut.com
   Ronald Howard (NY 5256086) (*pro hac vice* pending)
8  rhoward@teamtogut.com
   Eitan Blander (NY 5693213) (*pro hac vice* pending)
9  eblander@teamtogut.com
   One Penn Plaza, Suite 3335
10 New York, New York 10119
   Telephone: (212) 594-5000

11

12 Attorneys to the Foreign Representatives of Golden
   Sphinx Limited
13

14
                  UNITED STATES BANKRUPTCY COURT
15
        CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION
16

17
   In re Golden Sphinx Limited,            Case No. 2:22-bk-14320-NB
18
                 Debtor in a Foreign        Hon. Neil W. Bason
19               Proceeding.
                                            Chapter 15
20
                                            **FOREIGN REPRESENTATIVES'**
21                                          **MOTION FOR (I) RECOGNITION OF**
                                            **THE JERSEY LIQUIDATION AS A**
22                                          **FOREIGN MAIN PROCEEDING AND**
                                            **(II) CERTAIN RELATED RELIEF**
23
                                            Hearing Date: TBD
24                                          Hearing Time: TBD
                                            Courtroom: TBD
25

26

27

28

# TABLE OF CONTENTS

RELIEF REQUESTED ................................................................................................ 1

JURISDICTION .......................................................................................................... 2

BACKGROUND .......................................................................................................... 2

I.    Background on the Debtor and the Jersey Liquidation ................................. 2

II.   Itkin's Fraudulent Conduct and Subsequent Litigation ............................... 3

III.  Commencement of the Jersey Liquidation  and
      Appointment of the Joint Liquidators .......................................................... 7

IV.   Post-Commencement Activities and the English Proceeding ....................... 7

BASIS FOR RELIEF REQUESTED ........................................................................... 8

I.    The Debtor Meets General Eligibility  Requirements of Section 109(a) of the
      Bankruptcy Code ......................................................................................... 9

II.   The Debtor Meets the Eligibility Requirements of Section 1517(a) .......... 10

      A.    The Jersey Liquidation is a Foreign
            Proceedings Within the Meaning of Section 1502 .................... 11

      B.    The Foreign Proceedings Are "Foreign Main Proceedings" ..................... 16

      C.    In the Alternative, the Court Should Find that the
            Foreign Proceedings Are "Foreign Nonmain Proceedings" ..................... 18

      D.    The Chapter 15 Case Has Been Commenced
            by a Duly Authorized Foreign Representative .......................... 19

III.  The Petition for Recognition Meets the Requirements of Section  1515 of the
      Bankruptcy Code and Bankruptcy Rule 1007(a)(4) .................................. 20

NOTICE .................................................................................................................... 22

NO PRIOR REQUESTS ............................................................................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**

*Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784 (Bankr. W.D. Pa. 2019)............................. 18

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013). ................................................................................................................................ 9

*In re ABC Learning Centres Ltd.*, 445 B.R. 318 (Bankr. D. Del. 2010)........................................ 13

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ................................................................................................ 21

*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009)....................................................... 11, 20

*In re Black Gold S.A.R.L.,* 635 B.R. 517 (B.A.P. 9th Cir. 2022) ..................................................... 9

*In re Carroll*, 586 B.R. 775 (Bankr. E.D. Cal. 2018) .................................................................... 9

*In re Culligan Ltd.,* 2021 WL 2787926, at *12 (Bankr. S.D.N.Y. July 2, 2021).......................... 17

*In re Digicel Group One* Limited, No. 20- 11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) ........ 11

*In re ENNIA Caribe Holding N.V.*, 594 B.R. 631 (Bankr. S.D.N.Y. 2018)................................... 13

*In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *7 (S.D.N.Y. Sept. 16, 2011), *aff'd*, 714 F.3d 127 (2d Cir. 2013) ...................................................................................................... 17

*In re Forge Grp. Power Pty Ltd.*, 2018 WL 827913, at *12 (N.D. Cal. Feb. 12, 2018)............... 10

*In re Gerova Financial Grp. Ltd.*, Case No. 12-13641 (ALG) (Bankr. S.D.N.Y. Oct. 11, 2012) . 20

*In re Inverness Distribution Limited f/k/a Morgan Creek International Limited*, Case No. 11-12106 (SCC) (Bankr. S.D.N.Y. June 1, 2011) ....................................................... 20

*In re JPA No. 111 Co., Ltd.,* 2022 WL 298428, at *5 (Bankr. S.D.N.Y. Feb. 1, 2022) ............... 10

*In re Ocean Rig UDW Inc.*, 570 B.R. 687 (Bankr. S.D.N.Y. 2017) ............................................. 10

THE ZORKIN FIRM

MOTION FOR RECOGNITION

*In re Ocean Rig*, 570 B.R. at 706 .................................................................................................. 17

*In re Octaviar Admin. Pty Ltd*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014) ........................................... 9

In *re PDV Insurance Company, Ltd.*, No. 18-12216 (MEW) (Bankr. S.D.N.Y Aug. 30, 2018)... 11

*In re Servicos de Petroleo Constellation,* 600 B.R. at 278 ............................................................ 19

*In re SphinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) ............................................................. 17

*In re Suntech*, 520 B.R. at 418 ....................................................................................................... 18

*In re Tri-Cont'l Exch. Ltd.,* 349 B.R. 627 (Bankr. E.D. Cal. 2006) ........................................ 11, 20

*In re Chiang*, 437 B.R. 397 (Bankr. C.D. Cal. 2010) .................................................................... 17

*In re Serviços de Petróleo Constellation S.A.*, 600 B.R. at 277 .................................................... 18

*Ozark Rest. Equip. Co. v. Anderson*, 816 F.2d 1222 (8th Cir. 1987) ............................................ 10

*Winick & Rich P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.),* 326 B.R.

229 (Bankr. S.D.N.Y. 2005) .................................................................................................... 10

**Statutes**

11 U.S.C. § 101(23) ...................................................................................................................... 11

11 U.S.C. § 101(24).......................................................................................................................  19

11 U.S.C. § 103(a) ...........................................................................................................................  9

11 U.S.C. § 109(a) ..................................................................................................................... 9, 10

11 U.S.C. § 1501. ............................................................................................................................ 8

11 U.S.C. § 1502(2).......................................................................................................................  18

11 U.S.C. § 1504 ...........................................................................................................................  22

11 U.S.C. § 1509(a) ......................................................................................................................  22

11 U.S.C. § 1515 ...........................................................................................................................  22

11 U.S.C. § 1515(b)(3) .................................................................................................................. 21

11 U.S.C. § 1515(b) ...................................................................................................................... 20

11 U.S.C. § 1516(a) ....................................................................................................................... 20

11 U.S.C. § 1516(c) ....................................................................................................................... 17

11 U.S.C. § 1517(a) ....................................................................................................................... 10

11 U.S.C. § 1517(b)(2 .......................................................................................................... 18

28 U.S.C. § 1334 ................................................................................................................... 2

28 U.S.C. § 1410 ................................................................................................................... 2

28 U.S.C. § 157 ..................................................................................................................... 2

28 U.S.C. § 157(b)(2)(P) ...................................................................................................... 2

Rules

Bankruptcy Rule1007(a)(4) ................................................................................................. 22

THE ZORKIN FIRM

MOTION FOR RECOGNITION

Andrew Wood and Alexander Adam, in their capacities as the joint liquidators and authorized foreign representatives (in such capacity the "**Foreign Representatives**") of Golden Sphinx Limited, a corporation organized and existing under the laws of Jersey (the "**Debtor**") that has commenced a creditors' winding up process under Art. 157(a) of the Companies (Jersey) Law 1991 (the "**Law**"), under the ultimate supervision of the Royal Court of Jersey in accordance with Chapters 4 and 5 of Part 21 of the Law (the "**Jersey Liquidation**"), by and through their undersigned counsel, respectfully submit this motion (this "**Motion**") and represent as follows:

## RELIEF REQUESTED

Pursuant to this Motion, the Foreign Representatives respectfully request, pursuant to sections 105(a) and 1515 of chapter 15 of Title 11 of the United States Code (the "**Bankruptcy Code**"), entry of an order (i) recognizing the Jersey Liquidation as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code; (ii) recognizing each of the Foreign Representatives as a "foreign representative," as defined in section 101(24) of the Bankruptcy Code; (iii) recognizing, granting comity to, and giving full force and effect in the United States to the Jersey Liquidation; and (iv) granting such other relief as the Court deems just and proper.  The relief requested in this Motion is without prejudice to any additional relief the Foreign Representatives may request.

In support of this Motion, the Foreign Representatives refer the Court to the statements contained in: (a) the *Declaration of Andrew Wood (A) as Required by 11 U.S.C. § 1515 and (B) in Support of Foreign Representatives' Motion for (I) Recognition of the Jersey Liquidation as a Foreign Main Proceeding, and (II) Certain Related Relief* (the "**Wood Declaration**", cited herein as "**Wood Decl.**"); (b) the *Declaration of Jeremy Garrood in Support of the Foreign Representatives' Motion for (I) Recognition of the Jersey Liquidation as a Foreign Main Proceeding,* (the "**Garrood Declaration**", cited herein as "**Garrood Decl.**");  and (c) *Corporate Statement and Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Rule 1007-3* (collectively, the "**Supporting Documents**"), all of which have been filed contemporaneously herewith.

# JURISDICTION

The United States Bankruptcy Court for the Central District of California (the "**Court**") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the *General Order No. 13-05* from the United States District Court for the Central District of California dated June 26, 2013 (the "**Amended Standing Order**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

Venue is proper under 28 U.S.C. § 1410 as the Debtor has assets within the United States located in California, as described further herein.

The Foreign Representatives have properly commenced this chapter 15 case under sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of the Jersey Liquidation under section 1515 of the Bankruptcy Code.

# BACKGROUND

1.   **Background on the Debtor and the Jersey Liquidation**

Debtor is a corporation organized and existing under the laws of Jersey bearing company number 78090 and with a registered office at Suite 3, Burlington House, St. Saviour's Road, St. Helier, JE2 4LA, Jersey.  (Wood Decl. ¶ 8.)

The principal assets of the Debtor are (a) the rightful ownership of a 100% interest in New Albion Property Limited ("**New Albion**"), a corporation organized and existing under the laws of England and Wales, whose sole material asset is a residence (the "**Residence**") located in Beverly Hills, California valued at approximately $45 million; and (b) certain debts due from various parties, including Itkin (defined below), M-BJEP Limited, M-NICE Limited and New Albion.[1]

---

[1]    The specific debts due to the Debtor are listed below.  The Debtor's interests in these debts are at the center of the California Action (defined below):

a)    a loan receivable due to the Debtor from New Albion in the sum of £38,385,281 arising under a loan agreement made in or around June 2004, said to have been assigned by the Debtor to Itkin while he was the sole director of the Debtor under his hand and without shareholder consent;

b)    a loan receivable due from M-NICE Limited, a company incorporated in accordance with the laws of and domiciled in the Isle of Man, in the sum of $15,504,000 under an agreement dated 23 July 2013, said to have been assigned by the Debtor to Itkin while he was the sole director of the Debtor under his hand and without shareholder consent;

MOTION FOR RECOGNITION

(*Id.* ¶ 9.)  The Debtor acquired the shares in New Albion in 2013; New Albion acquired the Residence in 2004, and since that time, has held title to it in fee simple.  (*Id.*)

The Debtor is owned by JTC Trust Company Limited as trustee of the Amber Trust (or a legacy trust following unlawful directions by Garry Y. Itkin, the former director of the Debtor ("**Itkin**")) (the "**Trust**").  The Trust holds shares in the Debtor indirectly through JTC Nominees Limited and JTC Services Limited (formerly known as Minerva Nominees Limited and Minerva Services Limited).  JTC Trust Company, JTC Services Limited and JTC Nominee Limited are all wholly owned subsidiaries of JTC plc, a global provider of fund management and other financial services.  (*Id.* ¶ 10.)

Both the Trust and the Debtor were created as passive investment-holding vehicles, created by and operated for the ultimate benefit of Alexander Sabadash, a US citizen, his wife Larisa Sabadash, and their two adult children.  (*Id.* ¶ 11.)

In or around 2000, Mr. Sabadash hired Itkin to perform accounting services for various companies under Mr. Sabadash's ownership.  It was around this time that Itkin was also hired to manage and oversee the finances of the Debtor as a director, as well as the finances of several of Mr. Sabadash's other companies.  (*Id.* ¶ 12.)

2.    **Itkin's Fraudulent Conduct and Subsequent Litigation**

In 2014, Mr. Sabadash – who was formerly an elected Senator in Russia – was arrested in Moscow, apparently because of "political differences" with government representatives.  (*Id.* ¶ 13.)

On August 2, 2016, Larisa Sabadash filed a Petition for Marital Dissolution in the Los Angeles Superior Court, LASC Case No. BD644102.  With the filing and service of the petition, there were automatically imposed by operation of law temporary restraining orders ("**ATROs**"),

---

c)    a promissory note dated October 11, 2012 in the sum of $19,516,000 issued by M-BJEP Limited, the benefit of which was assigned to the Debtor, said to have been assigned by the Debtor to Itkin while he was the sole director of the Debtor under his hand and without shareholder consent; and

d)    the sum of $473,509 due from Itkin as money had and received having been unlawfully taken from the Debtor's bank account at First Curacao International Bank.

1   which enjoined both parties from transferring, encumbering, hypothecating  or disposing of

2   property without prior court order or written consent.  The marital dissolution proceeding and the

3   ATROs remain pending as of the date hereof.  (*Id.* ¶ 14.)

4       A.    *The First Jersey Action*

5       The Debtor asserts that, in Mr. Sabadash's absence, Itkin, the former director of the

6   Debtor, engaged in fraudulent and unauthorized self-dealing actions as director of the Debtor.  On

7   November 22, 2016, after the marital dissolution proceeding had been commenced, the Debtor

8   was named as a defendant in an action brought by Itkin (the "**First Jersey Action**") filed in the

9   Royal Court of Jersey, Samedi Division (the "**Jersey Court**").  Itkin issued the action against the

10  Debtor when he was the sole director of the Debtor and did not defend it, leading to a default

11  judgment.  (*Id.* ¶ 15.)

12      The First Jersey Action resulted in a money judgment (the "**Money Judgment**") in favor

13  of Itkin in the amount of £505,000 plus interest and costs.  The Debtor was unsuccessful in

14  attempting to set aside the Money Judgment.  An application to set aside judgment was lodged

15  and came before the Jersey Court on July 24, 2018 whereupon it was adjourned to a date to be

16  fixed.   Following a substantive hearing, on April 20, 2021 the application to set aside was

17  refused.  The Court accepted that the Debtor had a prima facie defense to the action, but

18  determined that the Debtor's delay in pursuing the application would make it unjust to set aside

19  the Money Judgment.  (*Id.* ¶ 16.)

20      As a consequence of the Money Judgment, Itkin, in his capacity as director of the Debtor,

21  caused the Debtor to unlawfully transfer 100% of the Debtor's interest in New Albion (the "**New**

22  **Albion Shares**") to himself while the ATROs issued in the marital dissolution proceeding

23  remained in effect, and without permission of the court and without the knowledge, authorization

24  or consent of New Albion or the Debtor (other than Itkin himself in his capacity as director),

25  Alexander Sabadash or Larisa Sabadash.  Itkin was subsequently removed as director of the

26  Debtor and the Debtor's board passed a board resolution to void Itkin's purported transfer of

27  shares in New Albion.  (*Id.* ¶ 17.)

28

THE ZORKIN FIRM

- 4 -    MOTION FOR RECOGNITION

1    Itkin has also alleged, in the alternative, that he was entitled to appropriate the New

2    Albion Shares under the terms of a Guaranty Agreement said to be dated October 9, 2012, entered

3    into by the Debtor under his hand and without shareholder approval, when Itkin was the sole

4    director of the Debtor. The Guaranty purports to oblige the Debtor to guarantee and indemnify all

5    and any creditors of Mr Sabadash, without limitation.  Itkin alleges that he relied on the Guaranty

6    to unlawfully transfer the New Albion Shares to himself.  (*Id.* ¶ 18.)

7        B.    *The California Action*

8        In 2017, the Debtor, along with several other companies affiliated with Mr. Sabadash,

9    commenced an action against Itkin and other defendants in the Superior Court of the State of

10   California for the County of Los Angeles (the "**California Court**") styled *AFB Trading One,*

11   *Inc., M-BJEP Limited, M-NICE Limited, Golden Sphinx Limited; New Albion Property Limited*

12   *vs. Garry Y. Itkin, The Lighthouse Partnership Limited; and DOES 1 through 100* (the

13   "**California Action**").  (*Id.* ¶ 19.)  Among the claims asserted is a claim by the Debtor against

14   Itkin for his alleged fraudulent transfer of the New Albion Shares from the Debtor to himself

15   while he was the Debtor's sole director.  The California Action is presided over by the Hon.

16   Michael L. Stern.  (*Id.*)

17       In response to the commencement of the California Action, Itkin filed a cross-complaint

18   (the "**Cross-Complaint**") asserting various claims against Mr. and Ms. Sabadash and other

19   parties, including a cause of action (the "**Alleged Partnership Cause of Action**") against Mr.

20   Sabadash to dissolve an alleged partnership (the "**Alleged Partnership**") between Mr. Sabadash

21   and himself.  Through this cause of action, Itkin seeks to dissolve and wind up the Alleged

22   Partnership's remaining business, settle an alleged debt of $56 million owed to Itkin using the

23   Alleged Partnership's assets, and distribute any remaining net amounts according to the terms of

24   the Alleged Partnership.  The Cross-Complaint asserts that Itkin transferred the Debtor's shares in

25   New Albion to himself as part of an "effort to preserve his share of the assets of the Partnership

26   [by pursuing] some of the debts owed to him by the Partnership abroad," and refers to the New

27   Albion Shares as "Partnership property."  Furthermore, in interrogatory responses, Itkin identified

28

the Debtor as a corporate entity falling under the auspices of the Alleged Partnership and the New

Albion Shares that he transferred to himself as Alleged Partnership property.  (*Id.* ¶ 20.)

Judge Stern has scheduled a pre-trial status conference on August 18, 2022, and

anticipates commencing a jury trial on the issues on August 22, 2022.   (*Id.* ¶ 21.)

> C.    *The Federal Action*

In an effort to enforce the Money Judgment, on June 16, 2021, Itkin filed a complaint in

the District Court for the Central District of California asserting a cause of action for recognition

of the Money Judgment under the Uniform Foreign-Country Money Judgments Recognition Act

(C.C.P. § 1713 *et. seq.*), bearing case no. 2:21-cv-04907 (the "**Federal Action**"), which has been

assigned to the Hon. John A. Kronstadt.  The Debtor has filed counter-claims in the Federal

Action for setoff and unjust enrichment.  On June 22, 2022, the District Court entered an order

continuing to August 15, 2022 a Motion to Dismiss Counterclaims filed by Itkin and a Motion for

Judgment on the Pleadings filed by the Debtor.  (*Id.* ¶ 22.)

> D.    *The Manchester Proceedings*

On April 8, 2022, English solicitors instructed by Itkin caused to be served on the Debtor,

at the address of its Jersey Counsel, an action issued out of the Business and Property Courts in

Manchester, England (the "**Manchester Proceedings**").  (*Id.* ¶ 23.)

In the Manchester Proceedings, Itkin seeks orders declaring that the New Albion Shares

are lawfully his and that the Guaranty is effective and enforceable.  Itkin also seeks orders that the

benefit of a promissory note payable to the Debtor, dated October 11, 2012 in the sum of

$19,516,000, was lawfully assigned to him by the Debtor when he was the Debtor's sole director,

without shareholder consent.  Itkin also seeks orders establishing that a loan receivable due to the

Debtor, under a loan agreement in the sum of £15,504,000 dated July 23, 2013, had been lawfully

assigned to him by the Debtor when he was the Debtor's sole director, without shareholder

consent.   The Debtor had filed a defense to this claim in the English Proceeding prior to the

appointment of the Joint Liquidators.  (*Id.* ¶ 24.)

THE ZORKIN FIRM    MOTION FOR RECOGNITION

3.    **Commencement of the Jersey Liquidation and Appointment of the Joint Liquidators**

On June 21, 2022, the Debtor, through JTC Law, provided notice to its creditors pursuant to Art. 160(1) of the Law of the convening of a meeting of creditors on July 6, 2022 (the "**Creditors Meeting**") with a view to the Debtor being wound up under Chapter 4 of Part 21 of the Law.  The Debtor duly convened the Creditors Meeting on July 6, 2022.  (*Id.* ¶ 25.)

By resolution dated July 5, 2022, the Debtor's sole director approved a draft members' unanimous and special resolution to be proposed to the shareholders to wind up the Debtor and nominate the Joint Liquidators.  (*Id.* ¶ 26.)

On July 6, 2022, the Debtor's Jersey domiciled registered shareholders executed a unanimous written resolution resolving to wind up the Debtor and to nominate Alexander Adam and I as Joint Liquidators for the purposes of such winding up.  (*Id.* ¶ 27.)

At the Creditors Meeting on July 6, 2022, which was called in accordance with the provisions of Art. 160(1) of the Law, following fourteen-day notice to all creditors, Andrew Wood and Alexander Adam of Teneo Financial Advisory Limited ("**Teneo**"), were appointed Joint Liquidators in accordance with Article 161 of the Law.  (*Id.* ¶ 28.)

The commencement of the Jersey Liquidation caused an automatic stay to issue within Jersey.  As a matter of Jersey Law, once a winding up process has begun, no actions or proceedings shall be commenced or proceeded against the company except by leave of the court and subject to such terms as the court may impose.  (Garrood Decl. ¶ 22.)

4.    **Post-Commencement Activities and the English Proceeding**

Following their appointment, the Joint Liquidators have instructed counsel in Jersey and California in order to continue the proceedings already under way in each jurisdiction, and have instructed bankruptcy counsel in connection with this application.  (Wood Decl. ¶ 30.)

A.    *The Manchester Proceedings*

The Joint Liquidators' Jersey counsel, Jeremy Garrood of JTC Law, is also a member of the English bar, and is acting for the Joint Liquidators in the Manchester Proceeding as well as in matters of Jersey law.  (*Id.* ¶ 31.)

1    On July 18, 2022, the Joint Liquidators received correspondence from Freeths LLP, on

2    behalf of Itkin, regarding the Manchester Proceedings.  (*Id.* ¶ 32.)

3    The Joint Liquidators replied to Freeths LLP on July 21, 2022 seeking a consensual stay

4    of the Manchester Proceedings in view of the Jersey Liquidation having commenced.  The

5    automatic stay issued in the Jersey Proceeding does not extend to the Manchester Proceedings,

6    but the parties may agree that a stay should be imposed in those proceedings.  If Itkin does not

7    agree to a stay, the Joint Liquidators will apply to the English Court for their appointment to be

8    recognized in England and for a stay to be imposed in the United Kingdom.  (*Id.* ¶ 33.)

9        B.    *The California Action*

10    On July 28, 2022, Itkin filed a motion (the "**Bifurcation Motion**") to bifurcate the

11    upcoming trial in the California Action, such that Itkin's claims against Alexander Sabadash for

12    dissolving the Alleged Partnership and for breach of fiduciary duty would be tried first, with the

13    trial for claims against Itkin to follow.[2]  In the alternative, Itkin argues that the proper venue for

14    the claims pending in the State Court Action is the Royal Court of Jersey and also moves to

15    dismiss the Debtor's claims under the doctrine of forum non conveniens.  (*Id.* ¶ 34.)

16    The Joint Liquidators may seek a turnover proceeding in Jersey to retrieve the New

17    Albion shares, to the extent they are actually held by Itkin.  (*Id.* ¶ 35.)

18                              **BASIS FOR RELIEF REQUESTED**

19    The Foreign Representatives and the Debtor seek to consolidate the liquidation of the

20    Debtor's estate.  Towards that end, the Jersey Liquidation should be recognized in the United

21    States so that the Foreign Representatives can protect the Debtor's assets in the United States,

22    including with regard to the California Action and Federal Action.  Chapter 15 of the Bankruptcy

23    Code is designed to, *inter alia*, protect and maximize the value of a foreign debtor's assets and to

24    facilitate the fair and efficient administration of cross-border insolvencies, such as the Jersey

25    Liquidation, that protects the interests of all creditors, including the debtor.  *See*  11  U.S.C.  §

26    1501.

27

28

---

[2]    All other cross-claims asserted in the Cross-Complaint have been dismissed.

THE ZORKIN FIRM

MOTION FOR RECOGNITION

To be eligible for chapter 15 relief, the Debtor must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code.  In addition, the petition for recognition must meet the requirements of section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  If these elements are satisfied, the Bankruptcy Court must grant recognition.  *See In re Black Gold S.A.R.L.,* 635 B.R. 517, 527 (B.A.P. 9th Cir. 2022) ("Congress' use of the word 'shall' in § 1517(a) removed the court's discretion in determining recognition if the requirements in the three subparagraphs of § 1517(a) have been satisfied.").

## I.    The Debtor Meets General Eligibility Requirements of Section 109(a) of the Bankruptcy Code

First, the Debtor must meet the eligibility requirements of section 109(a) of the Bankruptcy Code to obtain relief under chapter 15.  *See* 11 U.S.C. § 103(a) (chapter 1 of the Bankruptcy Code, which includes section 109(a), "appl[ies] in a case under chapter 15.") . Section 109(a) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."  11 U.S.C. § 109(a).  Thus, under section 109(a), a foreign debtor must reside or have a domicile, a place of business or property in the United States to be eligible to file a chapter 15 petition.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),* 737 F.3d 238, 247 (2d Cir. 2013).

It is well established that claims and causes of action, though intangible, constitute "property" of the Debtor.  *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 369-70 (Bankr. S.D.N.Y. 2014).  Here, the Debtor is the plaintiff in the California Action and is asserting affirmative claims therein.  Accordingly, the Debtor meets the eligibility requirement of Section 109(a) because it has property in the United States in the form of the claims asserted on its behalf in the California Action.  *See In re Carroll*, 586 B.R. 775, 782 (Bankr. E.D. Cal. 2018) ("[Clearly,] causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate.") (quoting *Ozark Rest. Equip. Co. v. Anderson*, 816 F.2d

1222, 1225 (8th Cir. 1987)); *Winick & Rich P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.),* 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) ("Without doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become property of the estate.  In addition, causes of action that accrue as a result of the filing are property of the estate.") (internal quotations omitted).

Additionally, an attorney retainer held by counsel within the United States on behalf of the Debtor is independently sufficient to satisfy the "property in the United States" eligibility requirement.  *See, e.g., In re Forge Grp. Power Pty Ltd.*, 2018 WL 827913, at *12 (N.D. Cal. Feb. 12, 2018) (overturning bankruptcy court ruling that retainer was not sufficient to demonstrate property in the United States, writing "[w]here the debtor seeks eligibility under § 109(a) based solely on a security retainer deposited by the debtor into a client trust account in the United States, which remains property of the client until applied to fees incurred, the property requirement is satisfied under the plain meaning of § 109(a)."); *In re JPA No. 111 Co., Ltd.,* 2022 WL 298428, at *5 (Bankr. S.D.N.Y. Feb. 1, 2022) ("[F]unds that are held in the United States to pay for law firm services for a debtor constitute a debtor's property that is located in the United States, and that thus satisfy the requirements of Section 109."); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New York counsel in a New York account as a factor satisfying section 109(a) of the Bankruptcy Code and establishing venue).

Here, the Debtor and Foreign Representatives similarly meet the eligibility requirement of Section 109(a) because it has an interest in certain funds deposited in client trust account with its bankruptcy counsel in the United States, Togut Segal & Segal LLP.  (Wood Decl. ¶ 37.)

## II.    The Debtor Meets the Eligibility Requirements of Section 1517(a)

Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."  11 U.S.C. § 1517(a).  Each of those requirements has been satisfied for the reasons set forth below.

A.  **The Jersey Liquidation is a Foreign Proceedings Within the Meaning of Section 1502.**

The Jersey Liquidation is a foreign proceeding.  Courts routinely recognize insolvency proceedings as "foreign proceedings" in foreign jurisdictions that have analogous English-law based frameworks similar to Jersey.  *See, e.g., In re Betcorp Ltd*., 400 B.R. 266 (Bankr. D. Nev. 2009) (recognizing Australian voluntary creditor wind up);  *In re Tri-Cont'l Exch. Ltd.,* 349 B.R. 627, 629 (Bankr. E.D. Cal. 2006) (recognizing creditor-initialed winding-up proceedings in St. Vincent and the Grenadines);  *In re Digicel Group One* Limited, No. 20- 11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) (ECF No. 29) (recognizing Bermuda provisional liquidation);  In *re PDV Insurance Company, Ltd.*, No. 18-12216 (MEW) (Bankr. S.D.N.Y Aug. 30, 2018) (ECF No. 11) (same);  *In re Ocean Rig*, 570 B.R. at 702 (recognizing Cayman provisional liquidation and scheme of arrangement).

Furthermore, the Jersey Liquidation meets all the elements of the definition of a "foreign proceeding" under the Bankruptcy Code.  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

The Jersey Liquidation meets each element of this definition because:

    (i)    it is a proceeding that is

    (ii)    either judicial or administrative in character,

    (iii)    collective in nature,

    (iv)    in a foreign country,

    (v)    authorized or conducted under a law related to insolvency or the adjustment of debts,

    (vi)    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court, and

    (vii)    for the purpose of reorganization or liquidation.

Each of these elements is addressed separately below.

### *(1)    The Foreign Proceeding Is a Proceeding*

The hallmark of a "proceeding" is a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice." *See In re Betcorp*, 400 B.R. at 277-78. A "proceeding" for the purposes of section 101(23) does not require any direct involvement or orders from a foreign court. *See id.* at 266 (voluntary winding up qualified as "proceeding" and a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code, though no petition or application was filed by the liquidators with any Australian court).

The Jersey Liquidation is governed by the statutory framework set forth in the Law. Specifically, as described in more detail in the Garrood Declaration and below, the Law specifies the acceptable procedures for appointing liquidators and winding up a Jersey company. (*See* Garrood Decl. ¶ ¶ 13-16.)

The Jersey Liquidation is therefore a "proceeding" because the Law falls within the type of specific statutory framework described in the case law. *See, e.g.*, *In re Betcorp*, 400 B.R. at 277-78.

### *(2)    The Foreign Proceedings are Judicial or Administrative in Character*

Second, the Jersey Liquidation is both administrative and judicial in nature. The role of the liquidator almost exclusively administrative, but the conduct of the liquidator and the liquidation is subject to the supervisory jurisdiction of the Jersey Court pursuant to the Court's original inherent jurisdiction and the Chapters 4 and 5 of Part 21 of the Law. (Garrood Decl. ¶ 17.)

Pursuant to Art. 159(1)(a) of the Law, a creditors' winding up commences when a corporate resolution for winding up is passed. (*Id.* ¶ 14.) Not less than fourteen days prior to the meeting at which the resolution for a creditors' winding up is proposed, the debtor must provide

1    notice to all creditors that a meeting of creditors will be held in Jersey on the same day as, and

2    immediately following the making of the resolution to wind up the debtor. *See* Art. 160(1) of the

3    Law. (*Id.*)

4        The passing of the winding up resolution is immediately followed by a meeting of

5    creditors. At the meeting of creditors, any one of the creditors may nominate any person to be the

6    liquidator of the debtor. Absent any other nomination by a creditor, the person nominated by the

7    debtor to be liquidator becomes appointed liquidator effective as of the meeting of the creditors.

8    *See* Art. 161(3) of the Law. (*Id.* ¶ 16.)

9        The majority of the liquidators' tasks are administrative in nature, e.g., collecting assets;

10   distributing assets pursuant to the priorities set forth in the Law; conducting investigations of

11   possible voidable transactions (e.g., preferences, transactions at an undervalue, and extortionate

12   credit bargains); circulating information to creditors; preparing various required reports;

13   convening meetings. (*Id.* ¶ 18.)

14       As discussed in more detail below, the Joint Liquidators administer their duties under the

15   supervision of the Jersey Court and decisions regarding claims are appealable to a Jersey Court.

16   (*Id.* ¶ 20.)

17       Because the Jersey Liquidation involves the Foreign Representatives' supervision over the

18   Debtor's assets, the Jersey Liquidation is administrative in nature. Similarly, because the

19   Proceeding is under the ultimate supervision of the Jersey Court, it is also judicial in nature. *See*

20   *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010) (finding that an

21   Australian voluntary winding up was sufficiently administrative and judicial in nature, noting that

22   "[a]n Australian voluntary winding up is, generally, a proceeding with an administrative

23   character, although under certain circumstances the proceeding may temporarily become more

24   appropriately characterized as judicial.").

25           *(3)*    *The Foreign Proceeding Is Collective in Nature*

26       A proceeding is "collective" if it considers the rights and obligations of all creditors. *See*

27   *In re ABC Learning*, 445 B.R. at 328; *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631,

28   638 (Bankr. S.D.N.Y. 2018). Here, the Jersey Liquidation is a collective proceeding because it is

1    being conducted for the benefit of the Debtor's creditor body as a whole, and not just a single

2    creditor.   The Foreign Representatives are obliged to realize the assets of the company and apply

3    them in satisfaction of the company's debts. (*See* Garrood Decl. ¶ ¶ 19-22.)

4        In carrying out their duties, the Foreign Representatives, as joint liquidators, will call for

5    proofs of debt and any person claiming to be a creditor (including future and contingent creditors)

6    may prove by filing a proof of debt in writing with supporting information by a date advertised in

7    the Jersey Gazette and notified to known creditors, being not less than 40 days and not more than

8    60 days after the date the winding up commenced.  Proofs of debt may be inspected by all

9    creditors after the deadline for filing proofs of debt has passed.  (*Id*. ¶ 19.)

10       In the event a proof of debt is rejected by the liquidators, the creditor may appeal to the

11    Jersey Court.   (*Id*. ¶ 20.)

12       The Jersey Liquidation also results in an automatic stay within Jersey.  As a matter of

13    Jersey and English law, once a winding up process has begun, no actions or proceedings shall be

14    commenced or proceeded with against a company without leave and on terms of the Jersey Court.

15    (*Id*. ¶ 22.)

16       In order to be released and discharged at the conclusion of the Jersey Liquidation, the

17    Foreign Representatives will be required to notify all creditors who proved a debt and all

18    shareholders of the Debtor of their intention to file for a release and discharge, at meeting of

19    creditors at which all creditors may vote by reference to the value of their claim.  Any interested

20    person may apply to the Jersey Court for orders delaying the dissolution of a company and the

21    release of the liquidators.   (*Id*. ¶ 26.)

22       In sum, the Jersey Liquidation is a collective proceeding that considers the rights and

23    obligations of all creditors.

24                 *(4)*     <u>*The Foreign Proceeding Is Located in a Foreign Country*</u>

25       The Jersey Liquidation  commenced on July 6, 2022 following approval by the Debtor's

26    board of directors of a draft members' unanimous and special resolution to wind up the Debtor,

27    and the making of that unanimous special resolution in Jersey, by the Debtor's Jersey domiciled

28    registered shareholders.   (Wood Decl. ¶ ¶ 26-27.)

1    Based on these facts, there can be no doubt that the Jersey Liquidation is located in Jersey,

2  a foreign country.  *See, e.g., In re Betcorp,* 400 B.R. at 281 ("The voluntary winding up must be

3  located in a foreign country. The special resolution commencing Betcorp's voluntary winding up

4  was made at a meeting that was held at the company's registered office, which is located in

5  Melbourne, Australia.").

6                    *(5)    The Foreign Proceeding Is Authorized or Conducted Under*

7                              *a Law Related to Insolvency or the Adjustment of Debts*

8    The Jersey Liquidation is authorized and being conducted under the Law, which is the

9  Jersey law that governs the insolvency of companies in Jersey.  (Garrood Decl. ¶ 13.)

10 Additionally, the liquidation proceeding is also controlled and conducted according to the

11 Bankruptcy (Désastre) (Jersey) Law 1990, the Bankruptcy (Désastre) (Jersey) Order 2006, and

12 the Bankruptcy (Désastre) Rules 2006.  (*Id*.)

13                   *(6)    Under the Foreign Proceeding, the Debtor's Assets and*

14                            *Affairs Are Subject to the Control or Supervision of a*

15                            *Foreign Court*

16    "[T]he requirement that the debtor's assets be subject to the control and supervision of a

17 foreign court does not require that the foreign proceedings play out entirely in a judicial context

18 like cases under the Bankruptcy Code.  The ability of a party to ask for court assistance

19 concerning the proceeding is sufficient to satisfy this element."  8 Collier on Bankruptcy, ¶

20 1501.03 (16th ed. 2018).

21    Here, the Jersey Court plays multiple supervisory roles in the Jersey Liquidation.

22 Specifically, as noted above, the Foreign Representatives' powers are subject to the control and

23 supervision of the Jersey Court.  (*See* Garrood Decl. ¶ ¶ 22-25.)

24    Art. 185A of the Law provides that the Jersey Court may terminate the liquidation;

25 Art.180 of the Law provides that the Jersey Court may require property to be delivered to the

26 liquidator;  Art.183 of the Law requires that relevant persons including officers of a company are

27 required to co-operate with the liquidator and that failure to comply with these provisions are

28

1    criminal offences.  (*Id.* ¶ 23.)  The Jersey Court can remove a liquidator from his or her position

2    for cause and appoint another liquidator.  (*Id.*)

3    　　　　　Furthermore, the Law allows interested parties to seek relief from the court.  Art.186A of

4    the law provides that the liquidator or a contributory or creditor of the company may apply to the

5    Jersey Court for the determination of a question arising in the winding up, or for the court to

6    exercise any of its powers in relation to the winding up.  (*Id.* ¶ 24.)  The Jersey Court, if satisfied

7    that it will be just and beneficial to do so, may accede wholly or partially to the application on

8    such terms and conditions as it thinks fit, or make such other order on the application as it thinks

9    just.  The Jersey Court may exercise all or any of the powers that would have been exercisable by

10   it or by its agents under the Law or the Bankruptcy (Désastre) (Jersey) Law 1990, and may make

11   an order terminating the winding up.  (*Id.* ¶ 25.)

12   　　　　　Section 175 also provides for a creditor to apply to the court for the removal of a

13   liquidator.  (*Id.*).  Additionally, as discussed above, any interested person may apply to the Jersey

14   Court for orders delaying the dissolution of a company and the release of the liquidators.  (*Id.* ¶ 26.)

15   　　　　　In the Jersey Liquidation, the Foreign Representatives administers the Debtor and its

16   assets under the supervision and control of the Jersey Court.  *See In re ABC Learning*, 445 B.R. at

17   332 (finding that actual intervention by a foreign court is not necessary to demonstrate control or

18   supervision, noting that "[m]ost actions in a U.S. Bankruptcy Court are upon the motion of an

19   interested party and are not undertaken *sua sponte.*").

20   　　　　　　　　　*(7)*　　　*The Foreign Proceedings Are for the Purpose of*

21   　　　　　　　　　　　　　*Reorganization or Liquidation of the Debtor*

22   　　　　　Here, the purpose of the Jersey Liquidation is a liquidation and complete winding up of

23   the Debtor.  (*See* Wood Decl. ¶ 42.)   Therefore, the Jersey Liquidation is a proceeding for the

24   purposes of reorganization or liquidation.

25   　　　　**B.    The Foreign Proceedings Are "Foreign Main Proceedings"**

26   　　　　　Under section 1502(4) of the Bankruptcy Code, the term "foreign main proceeding" means

27   "a foreign proceeding pending in the country where the debtor has the center of its main interests"

28   ("**COMI**").  *See In re Chiang*, 437 B.R. 397, 399 (Bankr. C.D. Cal. 2010) ("[F]or every debtor,

1  there is a country where the debtor's COMI is located, and every debtor has one (but not more

2  than one) COMI.").   Absent evidence to the contrary, a debtor's registered office is presumed to

3  be its COMI.   11 U.S.C. § 1516(c).   *See In re Tri-Cont'l Exch..,* 349 B.R. at 634;  *In re Betcorp,*

4  400 B.R. at 285;  *In re Culligan Ltd.,* 2021 WL 2787926, at *12 (Bankr. S.D.N.Y. July 2, 2021).

5  Here, the Debtor's registered office is located in Jersey, creating a presumption that Jersey is the

6  COMI for the Debtor.

7       Although the presumption that Jersey is the COMI of the Debtor can be rebutted, in the

8  event of a COMI challenge, other relevant factors can be considered and, here, also point to

9  Jersey.  Courts consider a variety of factors when assessing COMI including, "the location of the

10  debtor's headquarters; the location of those who actually manage the debtor and/or the

11  jurisdiction whose law would apply to most disputes."  *In re SphinX, Ltd.*, 351 B.R. 103, 117

12  (Bankr. S.D.N.Y. 2006).

13       When determining the "location of those who actually manage the debtor," courts consider

14  more than the location of the board of directors of the debtor.  Notably, courts consider the

15  location where the activities of liquidators and provisional liquidators take place in their COMI

16  analyses.    *See, e.g.*, *In re Betcorp*, 400 B.R. at 292 (finding COMI in Australia where "[t]he

17  location of those that manage Betcorp - the liquidators" were located;  *In re Ocean Rig*, 570 B.R.

18  at 706 (finding debtors' COMI in the Cayman Islands because it was "the site where their

19  business [had been] run" by joint provisional liquidators pursuant to a protocol with the

20  directors).

21       Here, the Foreign Representatives, who are the day-to-day managers of the Debtor since

22  they were appointed as joint liquidators, reside in Jersey, and have played an active role in

23  monitoring and coordinating the Debtor's affairs since their appointment.   The Foreign

24  Representatives have "centralized the administration of the Debtor's affairs" in Jersey.  *See In re*

25  *Fairfield Sentry Ltd.*, 2011 WL 4357421, at *7 (S.D.N.Y. Sept. 16, 2011), *aff'd*, 714 F.3d 127 (2d

26  Cir. 2013) (finding COMI in the British Virgin Islands where British Virgin Islands liquidators

27  had been "directing and coordinating" the debtor's affairs since their appointment);  *In re Suntech*

28  *PowerHoldings Co.,* 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (finding COMI in the Cayman

THE ZORKIN FIRM

1  Islands where joint provisional liquidators had "centralized the administration of the Debtor's

2  affairs and its restructuring").

3      Moreover, Jersey law is generally applicable to the Debtor and will be applicable with

4  respect to any disputes arising with respect to the Jersey Liquidation.  The Debtor is incorporated

5  in Jersey and is subject to Jersey law.  (Wood Decl. ¶ 44).  Jersey is "plainly central to the

6  liquidation."  *See In re Culligan,* 2021 WL 2787926, at *13 (finding the Debtor's COMI was in

7  Bermuda, where it was incorporated and where a liquidation proceeding had been commenced,

8  rather than in New York, where the Debtor was involved in litigation);  *see also In re Servicos de*

9  *Petroleo Constellation S.A.,* 600 B.R. 237, 283 (Bankr. S.D.N.Y. 2019) ("By virtue of being

10  incorporated in the BVI [the foreign debtor] is subject to the BVI's laws, regulations, and

11  jurisdiction, including with respect to potential corporate disputes . . . the company always

12  maintains the direct governance of BVI law.").

13      Accordingly, because the Debtor's COMI is located in Jersey, the Jersey Liquidation is a

14  foreign main proceeding and thus the first element of section 1517(a) of the Bankruptcy Code is

15  satisfied.

16      **C.**    **In the Alternative, the Court Should Find that the Foreign Proceedings Are**

17      **"Foreign Nonmain Proceedings"**

18      In the alternative, courts will recognize a foreign proceeding as a "foreign nonmain

19  proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign

20  country where the proceeding is pending."   11 U.S.C. § 1517(b)(2).  Section 1502(2) defines

21  "[e]stablishment" as "any place of operations where the debtor carries out a nontransitory

22  economic activity[,]" and courts have required proof of more than a "mail-drop presence."  *In re*

23  *Serviços de Petróleo*, 600 B.R. at 277 (citation omitted); 11 U.S.C. §  1502(2).

24      As with COMI, whether the debtor has an "establishment" in a country is determined at

25  the time of filing the chapter 15 petition.  *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R.

26  784, 803 (Bankr. W.D. Pa. 2019) (adopting *Fairfield Sentry* and *In re Ran*, 607 F.3d 1017

27  findings that "the presumptive date from which [a c]ourt is to ascertain [a] debtor's center of

28  main interests and/or establishment is the date the Chapter 15 petition was filed").  Several factors

"contribute to identifying an establishment:  the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence" evidenced by, among other things, engagement of "local counsel and commitment of capital to local banks."  *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012).   The presence of liquidators is also relevant to the determination of whether a debtor has an establishment in that location.  *Id.* at 86.

In this case, Jersey is not merely a letterbox jurisdiction for the Debtor.  The Debtor's pre-liquidation corporate activities occurred in Jersey and during the liquidation, the Foreign Representatives have further consolidated the Debtor's liquidation in Jersey.  These facts are sufficient to, at a minimum, support the finding of an "establishment" in Jersey.  *See, e.g.*, *In re Servicos de Petroleo Constellation,* 600 B.R. at 278, 281-82 (recognizing that "COMI is a flexible determination and not a rigid application of factors").

## D.    The Chapter 15 Case Has Been Commenced by a Duly Authorized Foreign Representative

The Foreign Representatives are duly authorized to serve in their capacities as foreign representatives in this chapter 15 case and, as such, satisfy the second condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

Here, pursuant to a duly convened meeting of the creditors on July 6, 2022, called in accordance with the provisions of Art. 160(1) of the Law, the Foreign Representatives were appointed as joint liquidators of the Debtor for the purposes of the Debtor's liquidation in accordance with Art. 161 of the Law.  (Wood Decl. ¶ 28.)

1    As a matter of Jersey law, the Foreign Representatives are authorized to commence this

2    chapter 15 proceeding without further sanction of the Jersey Court.  (Garrood Decl. ¶ 27.)

3    Moreover, courts have acknowledged that a liquidator, or provisional liquidator, appointed

4    in English-tradition jurisdictions similar to Jersey constitutes a "foreign representative" for

5    chapter 15 purposes.  *See, e.g.*, *In re Tri-Cont'l Exch.,* 349 B.R. at 632 (joint liquidators in St.

6    Vincent and the Grenadines proceeding were "foreign representatives" pursuant to section

7    101(24)); *In re Betcorp Ltd.,* 400 B.R. at 294 (joint liquidators in voluntary winding up in

8    Australia were "foreign representatives");  *In re ABC Learning,* 445 B.R. at 334 (same);  *In re*

9    *Gerova Financial Grp. Ltd.*, Case No. 12-13641 (ALG) (Bankr. S.D.N.Y. Oct. 11, 2012) (ECF

10    No. 29) (joint provisional liquidators appointed pursuant to Bermuda law were duly appointed

11    foreign representatives);  *In re Inverness Distribution Limited f/k/a Morgan Creek International*

12    *Limited*, Case No. 11-12106 (SCC) (Bankr. S.D.N.Y. June 1, 2011) (ECF No. 31) (same);  *see*

13    *also* Garrood Decl. ¶¶ 9-12 (explaining Jersey's connection to English law).

14    Accordingly, the Foreign Representatives are proper "foreign representatives" within the

15    meaning of section 101(24) of the Bankruptcy Code.  *See* 11 U.S.C. § 1516(a) ("If the decision

16    [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign

17    representative, the court is entitled to so presume.").

18    **III.    The Petition for Recognition Meets the Requirements of Section 1515 of the**

19    **Bankruptcy Code and Bankruptcy Rule 1007(a)(4)**

20    This chapter 15 case was duly and properly commenced as required by section 1504 of the

21    Bankruptcy Code by filing a petition for recognition pursuant to section 1515(a) of the

22    Bankruptcy Code.  Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition

23    must be accompanied by one of the following:

24        1.  a certified copy of the decision commencing such foreign proceeding and
   appointing the foreign representative;

25        2.  a certificate from the foreign court affirming the existence of such foreign
   proceeding and of the appointment of the foreign representative; or

26        3.  in the absence of evidence referred to in paragraphs (1) and (2), any other evidence
   acceptable to the court of the existence of such foreign proceeding and of the

27    appointment of the foreign representative.

28    U.S.C. § 1515(b).

THE ZORKIN FIRM                    - 20 -                    MOTION FOR RECOGNITION

The *Wood Declaration*, filed contemporaneously herewith, constitutes evidence of the existence of the Jersey Liquidation and of the appointment of the Foreign Representatives as the foreign representatives under section 1515(b)(3).  Courts have found similar statements to be sufficient evidence to support the existence of a voluntary winding up proceeding that is not directly overseen by a foreign court.  *See, e.g., In re Betcorp*, 400 B.R. at 294 ("In cases such as Betcorp's, however, in which there is no formal court proceeding, the statute may be satisfied" with a statement by the foreign representative.");  *In re ABC Learning,* 445 B.R. at 334 ("Petitioner Peter Walker's *Statement of Foreign Representative,* at D.I. 4, is acceptable evidence under § 1515(b)(3) of the existence of the foreign proceedings and the appointment of the foreign representatives.").

The petition for recognition was filed accompanied by all fees, documents and information required by the Bankruptcy Code and the Bankruptcy Rules including (i) a corporate ownership statement containing the information required by Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (b) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of this chapter 15 case and (c) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives; and (iv) a certified copy of the Liquidation Order.  *See Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(A)(4) and 7007.1 and Local Rule 1007-3*, filed contemporaneously herewith; *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the petition for recognition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy

1    Code and Bankruptcy Rule 1007(a)(4) have been met and this chapter 15 case was properly

2    commenced. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

3        As demonstrated above, the Debtor also meets both the general eligibility requirements of

4    section 109(a) of the Bankruptcy Code and the specific eligibility requirements of section 1517(a)

5    of the Bankruptcy Code. Therefore, the Debtor is eligible for chapter 15 relief.

6                                   **NOTICE**

7        In accordance with Rule 2002(q) of the Bankruptcy Rules, the Foreign Representatives

8    will provide notice of this Motion to (i) the Debtor; (ii) the Office of the United States Trustee

9    for Region 2; (iii) all persons or bodies authorized to administer foreign proceedings of the

10   debtor; (iv) all entities against whom provisional relief is being sought under §1519 of the Code;

11   and (v) all parties to litigation pending in the United States in which the debtor is a party at the

12   time of the filing of the petition. The Foreign Representatives submit that, in view of the facts

13   and circumstances, such notice is sufficient and no other or further notice need be provided.

14                              **NO PRIOR REQUESTS**

15       No previous request for the relief sought herein has been made by the Foreign

16   Representative to this or any other court.

17       **WHEREFORE**, the Foreign Representatives respectfully request entry of the

18   Proposed Order granting the relief requested herein and such other and further relief as the Court

19   may deem just and appropriate.

20

21

22   Dated:    Aug. 9, 2022          TOGUT, SEGAL & SEGAL LLP

23

24                                  By:

25                                      Kyle J. Ortiz
                                        Bryan M. Kotliar
26                                      Ronald Howard
                                        Eitan Blander
27                                      *Attorneys to the Foreign Representatives of*
                                        *Golden Sphinx Limited*
28

- 22 -                                  MOTION FOR RECOGNITION

1

2      Dated:    August 9, 2022              The Zorkin Firm

3

4                                           By:/s/ Michael Zorkin
                                               Michael Zorkin
5                                              *Attorneys to the Foreign Representatives of*
                                               *Golden Sphinx Limited*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE ZORKIN FIRM    ⑦

MOTION FOR RECOGNITION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

One Penn Plaza, Suite 3335, New York, New York 10119

A true and correct copy of the foregoing document entitled (*specify*): Foreign Representative's Motion for (I) Recognition of the Jersey Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief; Declarations of Andrew Wood and Jeremy Garrood with exhibits; Order.

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  08/10/2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

See attached service list.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/09/2022 | Dawn Person | /s/ Dawn Person |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**Service List**

| Party: | Notice Address: |
|---|---|
| • Golden Sphinx, Limited | Golden Sphinx, Limited<br>Suite 3, Burlington House<br>St. Saviour's Road<br>St. Helier, JE2 4LA, Jersey |
| • Garry Itkin | Mr. Garry Itken<br>13355 Mulholland Drive<br>Beverly Hills, CA 902120<br><br>Molnar Atabek LLP<br>ATTN: Jon A. Atabek<br>610 Newport Center Dr., Ste. 420<br>Newport Beach, CA 92660<br><br>Abir Cohen Treyzon Salo, LLP<br>ATTN: Boris Treyzon, Esq.<br>Scott E. Mclain, Esq.<br>16001 Ventura Blvd, Suite 200<br>Encino, CA 91436<br><br>Freeths LLP<br>ATTN: Nicholas Davies<br>5th Floor, 3 St Paul's Place<br>129 Norfolk Street<br>Sheffield S1 2JE<br>United Kingdom |
| • AFB Trading One, Inc.<br>• M-NICE Limited,<br>• Golden Sphinx Limited<br>• New Albion Property Limited | THE ZORKIN FIRM<br>Michael Zorkin<br>6320 Canoga Ave., 15th Floor<br>Woodland Hills, CA 91367<br><br>The Kelley Law Firm<br>ATTN: Lloyd E. Kelley<br>2726 Bissonnet Ste 240 PMB 12<br>Houston, TX 77005<br><br>James D. Pierce<br>115 Guenther St.<br>Sugarland, TX 77478 |
| • Alexander Sabadash | THE ZORKIN FIRM<br>Michael Zorkin<br>6320 Canoga Ave., 15th Floor<br>Woodland Hills, CA 91367 |

|  | LAW OFFICES OF KOROL AND VELEN<br>Rozanna Velen<br>15760 Ventura Blvd, Suite 1160<br>Encino, CA 91436 |
|---|---|
| • Larisa Sabadash | LAW OFFICES OF JUDITH R. FORMAN, P.C.<br>Judith R. Forman<br>1500 Rosecrans Avenue, Suite 500<br>Manhattan Beach, CA 90266 |
| • M-BJEP, Limited | CKM Consultants Limited<br>Craig Mitchell<br>First Floor Office,<br>Queen Victoria House, Victoria Street,<br>Douglas, Isle of Man, IM1 2LF. |