UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

--oOo--

In Re:                              )  Case No. 2:22-bk-14320-NB
                                    )
GOLDEN SPHINX LIMITED,              )  Chapter 15
                                    )  Los Angeles, California
Debtor,                             )  November 15, 2022
------------------------------X        Tuesday, 1:00 P.M.

CONTINUED HEARING RE:
MOTION FOR RELIEF FROM
STAY [NA] [AFB P-TRADING
ONE, INC. vs. GARRY Y.
ITKIN]

CONTINUED HEARING RE:
MOTION FOR RELIEF FROM
STAY [NA] [GARRY Y. ITKIN
vs. GOLDEN SPHINX LIMITED]

TRANSCRIPT OF ZOOM PROCEEDINGS
BEFORE THE HONORABLE NEIL BASON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          KYLE ORTIZ, ESQ.
                         Togut, Segal & Segal, LLP
                         One Penn Plaza
                         Suite #3335
                         New York, New York  10119

For Creditor             DANIEL J. McCARTHY, ESQ.
Garry Y. Itkin:          Hill Farrer & Burrill, LLP
                         300 S. Grand Avenue
                         37th Floor
                         Los Angeles, California  90071

Proceedings produced by electronic sound recording;
transcript produced by transcription service.



Court Recorder:                 Dina G. Johnson
                                U.S. Bankruptcy Court
                                Central District of California
                                Edward R. Roybal Federal Building
                                  and Courthouse
                                255 East Temple Street, Room #940
                                Los Angeles, California  90012
                                (855) 460-9641

Court Transcriptionist:   Ruth Ann Hager, C.E.T.**D-641
                                Ben Hyatt Certified Deposition
                                  Reporters
                                17835 Ventura Boulevard
                                Suite #310
                                Encino, California  91316

 

LOS ANGELES, CALIFORNIA, TUESDAY, NOVEMBER 15, 2022

2:46 P.M.

--oOo--

THE COURT:  Calendars #6.00 and #7.00, Golden Sphinx.

Let's see.  Mr. Ortiz, would you state your appearance, please?

MR. ORTIZ:  Good afternoon, Your Honor.  Kyle Ortiz of Togut Segal & Segal for the foreign representatives, Andy Wood and Alex Adam.

THE COURT:  Thank you.

Mr. McCarthy.

MR. MCCARTHY:  Good afternoon, Your Honor.  Dan McCarthy of Hill Farrer for the moving party, Garry Itkin.

THE COURT:  Thank you.

Anyone else who wishes to state an appearance?

(No response.)

Okay.  So at the last hearing -- well, not the last hearing, but the one before that actually, this matter was taken under submission on October 11 and then I had done a continued hearing to November 8, but with the anticipation that I do either a written or an oral disposition before then.  I wasn't able to do that, so we're -- that brings us to today, November 15.

So having considered the matter further and gone

4

back and reviewed the papers and the oral arguments of the parties, I'm going to deny the motions in substantial part, but grant them in limited part.

Let me, first of all, clarify a couple of things from the previous hearing.  I think there was possibly a little confusion about between 362(a)(1) and (a)(3) and in my view the *Parker v. Bain* analysis that deals with disaggregating claims is something that rises under 362(a)(1), and there's a different sort of analysis that arises under 362(a)(3), although it may be appropriate to apply the same sort of disaggregation analysis.  But I think that's -- I've got to look carefully on whether it is appropriate or not.  So that's the first issue that I wanted to address.

Then when it comes to the -- looking at the claims by the debtor, it seems to me that it's conceptually possible that claims by the debtor can still be asked to exercise control, especially when you're talking about disputes over who actually is the debtor and who controls the debtor.  And so it can be exercised control over property of the estate.

And so going through the three-part analysis in *Bialac*, 712 F.2d 426 (9th Cir. 1983) at pages 431-432, as the parties laid out there has to be determination of whether there was property -- whether the debtor has a

property right under state law, whether that's property of the estate, and then whether the property would be altered in a matter contrary to the relevant provisions of 362(a).

And then I think both that case and *Hillis Motors*, 997 F.2d 581 (9th Cir. 1993) recognized that you can get situations in which there's some messiness about whether control of -- that could be characterized as control over the debtor bleeds over into control over property of the estate.  And it seems to me that a lot of what we're talking about here does bleed over into that and the fact that the automatic stay might not apply under Section 362(a)(1) doesn't mean the automatic stay doesn't apply under 362(a)(3).

And so claims by the debtor against Mr. Itkin and others might not be stayed under 362(a)(1), but in my view they are stayed under 362(a)(3).

So looking at the verified complaint, Exhibit A to the motion at docket 48, there's -- Golden Sphinx is one of the plaintiffs.  There are claims for breach of fiduciary duty, declaratory relief, fraudulent concealment, constructive fraud, conversion accounting, quiet title, cancellation of instrument, intentional interference with respect to economic relations, intentional interference with contractual relations, and the prayers for relief cover all of those things as well.

6

And the factual allegations in that complaint really go back to something that I've tried to summarize at the hearing on October 11, 2022 that in broad brush, in big picture there's -- the foreign representatives need to sort out different claims to who controls property of the debtor.  And that involves the question about whether Mr. Itkin wrongfully, allegedly, caused a change in directors and officers, of various entities and used that to have, as I think Mr. Ortiz phrased it at one point, an unanimous meeting with himself to consent to various matters, and then to sue the entity that he was controlling to let that entity have a default and, thereby, to gain control over property of the estate.

Now, along the way, the complaint at issue or the one I was just referring to, Exhibit A to the motion for summary judgment, involves alleged control over other entities.  So as I understand it, just to recap here on the structure, we've got Alexander Sabadash (phonetic). There -- then he I think has, if not 100 percent ownership of at least control over JTC Nominees Ltd. and JTC Services Ltd., formerly known as Minerva Nominees and Services. They, in turn, have control and ownership of JTC Trust Company Limited as trustee of the Amber Trust or successor trust.  That has 100 percent ownership of the debtor, which has 100 percent of New Albion Property Limited, which has,

I think, 100 percent ownership of the Beverly Hills property and also some claims.

And we've got Mr. Itkin asserting both monetary claims and ownership and alleged partnership interests and so on and the debtor's spouse, divorcing spouse, Larissa Sabadash (phonetic) asserting interests in the Beverly Hills property certainly, but I think also in these other -- the whole chain of entities.

Okay.  So in terms of what could be property of the bankruptcy estate so as to come within *Bialac* and *Hillis Motors*, I think we're not only talking about what actually is determined to be property of the estate, but also claims to be property of the estate.  And the -- and Golden Sphinx Limited certainly has a claim to its -- that it still owns the New Albion shares, which in turn own the Beverly Hills property.  And so I don't think I need to make any sort of a ruling about whether the bankruptcy estate does or does not still have an interest in New Albion.  It's got a claim that it still has an interest in New Albion and/or claim to -- for damages as a result of new Albion having been transferred away.

And the continued litigation of the claims involving Golden Sphinx Limited under the complaint that I mentioned before, Exhibit A to the motion for relief from the automatic stay, it seems to me would be asked to

exercise control over that property, those claims and if it turns out that the -- that in fact New Albion was never properly transferred away, then New Albion itself and its ownership of the Beverly Hills mansion.

So for all of those reasons, I think to the extent that litigation involves the debtor itself, all of that is stayed.  And it seems to me that although Mr. McCarthy had pointed to that there's not a great deal of specificity about why an additional breathing spell is needed and exactly what books and records are being sought and pointed out that I think Mr. Zorkin was involved in -- well, I may have the wrong party, but anyway, somebody has been involved for a while, so maybe there is not as much need for discovery, I recognize all of those things.  And yet, it seems to me that in broad terms the whole point of the breathing spell is you don't know what you don't know. And the foreign representatives need a little time to wrap their arms around this, figure out if they need more discovery, figure out what motions to file and so on.

So for all of those reasons, I think the stay applies and relief from the automatic stay right now is not appropriate when it comes to the debtor's involvement in that litigation that I mentioned before.

So -- but I keep focusing on the debtor's involvement.  So there are also claims here that Mr. Itkin

did wrongful acts to take control of AVB Trading One, Inc. And M-BJEP Limited and M-NICE Limited. And those things, it seems to me, the -- doing my best to try to figure out how far the Ninth Circuit would go. I think the issues there seem to me probably are inextricably intertwined with the issues involving Golden Sphinx.

But I also think that in terms of whether the automatic stay applies, if I am looking to 362(a)(3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate, I don't think I can fairly say that there -- that the bankruptcy estate has either a property interest in or claims of a property interest in which itself would be property. I don't think either actual property or claims involve AFB Trading One.

Now, I realize that there are receivables that may exist involving -- I forget if it was just M-BJEP and -- or it and M-NICE or just one of the -- one of those. But anyway, there are some claims involved back and forth. And so I think it's messy to try to differentiate and it's messy to try to figure out the -- ultimately the bigger issue here is, was there a partnership agreement between Mr. Sabadash and Mr. Itkin or not.

And so if I were either the state court or the federal court over these various actions, I might be

persuaded that these are all inextricably intertwined and I shouldn't bifurcate and try to go forward with one thing without the other.  But for purposes of the automatic stay I don't think that I can conclude that there's an attempt to an act to exercise control over property of the estate, even just claims of the estate by going forward with the litigation to the extent that it's limited to AFB Trading One, M-BJEP and M-NICE.  Those things, it seems to me, that if the state court or the federal court presiding over the non-bankruptcy litigation were to be persuaded that it's possible to disaggregate those matters and to bifurcate the proceedings and go ahead with those, then I don't think the automatic stay is implicated, although in its absolutely broadest sense it might be possible to say that by litigating the same issues that there would be some sort of effect to control property of the estate because ultimately if, for example, there's no partnership that has one effect on the assets of the estate and if there is a partnership that has another effect on the assets of the estate.

But I think that crosses the line over into those cases that crosses the line over into those cases that Mr. McCarthy cited about the -- that there's the general principle that litigation over ownership of a debtor is -- does not come within 362(a)(3).

So not as clean as I would like, but I think

11

that's where the cases lead me when it comes to that action.

When it comes to the cross-complaint that's part -- that's Exhibit B to the motion, docket 48 for relief from the automatic stay, the -- there was some dispute about whether it's one claim or two claims that are at issue, but I'll address both.  When it comes to the dissolution of the partnership, I think it's very much subject to the automatic stay for the reasons that I've stated and the -- and based on the arguments of the parties at the last hearing and the *Korean Western* case that the parties had touched on before, 618 B.R. 282, that I issued in 2020.

So for all of those reasons, I think that the stay does apply to that first claim for dissolution of partnership, but that it doesn't apply again under the same analysis to the declaratory relief action to the extent that action still exists when it comes to the directors and officers of AFB Trading One.

I think that's everything.  So -- and this was under submission for a ruling and so that is my ruling, but I want to give the parties a chance to let me know if I have overlooked something or if you think that there's something -- before I make that a final ruling, I want to make sure that it's -- if you think I've got something

12

egregiously wrong, I'm not inviting re-argument of what you argued last time, but I want to find out that -- if you think I'm off on the wrong track here in some way that I'm not seeing.

So let me start with Mr. Ortiz.

MR. ORTIZ:  Good afternoon, Your Honor.  Kyle Ortiz, Togut Segal for the foreign representative.

No, Your Honor, I mean, I think -- look, we certainly think everybody is inextricably intertwined, but I understand your point that for some of those matters that were directly Gold Sphinx a party that you're saying you're rather leave that up to the state court or the federal court.  And so, you know, we appreciate the thoughtful analysis that went into the ruling.  I'm sure you want to hear from Mr. McCarthy after that.

There are two updates in the global proceeding that I just wanted to let you know about.  Not anything to do about it, but just wanted to give you a general case update at the end here, Your Honor.

THE COURT:  All right.  Thank you.

Mr. McCarthy.

MR. McCARTHY:  Thank you, Your Honor.  I do have just a few items of clarification and I wanted to make one general comment.  You know, when creditors' claims against the estate are stayed and relief from stay isn't given for

the creditors to proceed in a non-bankruptcy forum, they have some remedy in the Bankruptcy Court, which is to file a proof of claim and to get a recovery.

On the flip side of it, the debtor, whose claims are stayed by Your Honor's ruling, debtor is left with no ability and nobody has any ability to pursue those claims. So those claims are going to be left with assets that are not liquidated, at least for the time being until somebody at some point in time I guess filed the motion for relief from stay to pursue the affirmative claims of the estate. And that's an unusual situation that I've never found myself in where a debtor has been precluded by the stay from pursuing his claims with no relief in sight.

So that's my general comment.  I'm not trying to re-argue.  I'm just saying, from a conceptual perspective at least, it's in a very odd situation with respect to assets of the estate.

On the debtor's claims in the estate court litigation, I understand your ruling that those claims are stayed and those are -- have a number of claims that are alleged in the state court litigation.

While Your Honor focused on the state court litigation, I assume your ruling is equally applicable to the debtor's affirmative claims in the district court litigation, which are for setoff and for monies had and

received.

THE COURT:  Thank you for reminding me of that and, yes, that's true.

MR. McCARTHY:  Okay.  I understand that.

And then with respect to the affirmative claims of my client, as you know, my client has a relatively we think simple complaint in the district court action to have his foreign judgment recognized and I take it from Your Honor's comment that the complaint in the district court action for recognition of the foreign judgment would be stayed for the same reasons you indicated claims in the state action would be stayed.

THE COURT:  Correct.

MR. McCARTHY:  Okay.  Now, as to the state action, Your Honor, on his cross-complaint Mr. Ortiz is right.  I went back and checked and the second cause of action of my client was dismissed.  So that only left the first cause of action regarding determination of the dissolution of the partnership with Mr. Sabadash.  I understand your ruling on that.  You've viewed that as stayed and you're not giving any relief from stay on that.

Now, here's what I think we need further clarification.  The debtor's claims in the state court action, which are seven of the twenty-one claims, I understand those are stayed.  There are fourteen other

claims by four plaintiffs and the four plaintiffs are AFB Trading, M -- I think it's BJEC and M-NEST.  All right.  And as I understood Your Honor's comments, the claims -- the affirmative claims by those three other plaintiffs in the state court action are not stayed, but the claims of the fourth other plaintiff, which is New Albion Property Limited, are stayed because that conceivably affects property of the estate.

THE COURT:  Also correct.  Thank you for clarifying.

MR. McCARTHY:  Okay.  So in submitting a ruling, which I guess would be in limited part partially granting the motion in the state court action, I'd like to recognize in that order that Your Honor is ruling that the affirmative claims of those three plaintiffs are not stayed.  It's not a relief from stay issue, as much as it is an order confirming that the automatic stay does not apply to the claims of those three plaintiffs.  Would that be accurate?

THE COURT:  That is accurate and I guess I should note that I think there's a little bit of concern by bankruptcy judges about whether that's in the nature of declaratory relief.  And Congress I think when it enacted, what was it, 362(j) partially addressed that issue when it comes to termination of the automatic stay after multiple

bankruptcy filings under 362(c), but it didn't say anything one way or the other about whether courts can issue an order about when the stay doesn't apply in other instances.

I think, though, that it's part and parcel of determining whether the stay does apply to make a ruling about where I think it doesn't.  And so I don't think that this is exceeding my jurisdiction or authority by getting into a declaratory relief action that under Rule 7001 would need to be done by an adversary proceeding, but if one of you thinks that I'm overstepping the bounds there, you're welcome to raise that.  But I think it's fair game for me to issue an order that says that I don't think the stay applies to those other three plaintiffs.

MR. McCARTHY:  Okay.  Well, the other alternative, Your Honor, obviously is to say to the extent the stay does apply relief is given, but I think that's being a little intellectually dishonest because the stay doesn't really apply in the first place, at least as I understand your ruling and my argument.

THE COURT:  Yes.  And I think if the stay were to apply, I would be inclined probably not to grant relief from the automatic stay because it probably is too intertwined, in my view, and because of the need for a breathing spell.

So I think you're right.  It would be

intellectually dishonest and I don't think I would feel comfortable with that approach.

MR. McCARTHY:  Okay.  Your Honor, two other things.  One of the items we had asked for was a waiver of the 14-day stay.  I don't see that as necessary anymore given the timing of what's going on in the state and federal court.

The other item I had asked for was to make Your Honor's ruling applicable in any other bankruptcy proceeding filed by or against the debtor because the foreign representatives do have an option under applicable law to file a Chapter 7 or 11 case for the debtor.  We presently only have a Chapter 15 case.

And if that were to occur, and I don't know whether there's any intention in that regard, I wouldn't have to want to -- I wouldn't want to have to file these motions all over again.

THE COURT:  And so I'm sorry, what's the nature of the relief that you're asking for there?

MR. McCARTHY:  Oh, it would be making these orders applicable in any future bankruptcy case filed by or against the debtor.

THE COURT:  I see.  Okay.  I have some thoughts on that, but let me hear from Mr. Ortiz.

MR. ORTIZ:  Yeah.  Thank you, Your Honor.  Kyle

18

Ortiz of Togue Segal for the foreign representatives.

Frankly, Your Honor, I'm not sure you would have authority to make an order applicable to a proceeding that doesn't exist yet.  So that would -- that would be my main concern with that.  I mean, I'll tell you today, as we sit here, we have no intention of doing -- filing another proceeding.

But, you know, the other thing that's interesting is one of the updates that I'm going to give you is that there's currently a motion pending to remove the liquidators from Mr. Itkin in Jersey and maybe a new liquidator comes in and has a different view of things and wants to do something different.  I just don't think it's appropriate to make a ruling.

And look, I'm all for judicial efficiency and not having to do the same thing twice, but just because we don't know what we don't know, I don't think it's appropriate to make a ruling for something that doesn't exist yet.  It might be completely different parties.

THE COURT:  Okay.  I'm not going to grant relief that's effective in a future case for several reasons.  I think Mr. Ortiz is correct that there's at least a conceptually bit of a problem with granting relief for something that doesn't exist yet.  Congress in 362(d)(30 and (4) has provided for what might be called *in rem* relief

or another judge of this court refers to it as sometimes *ex parte* relief, and Rule 4001 does contemplate some *ex parte* relief from the automatic stay.

And so I think conceptually it might be possible to grant relief in some circumstances that's applicable in future bankruptcy proceedings and I've ruled in other cases that where there's a sufficient showing that's comparable to 362(d)(4) that I -- I don't think Congress meant to limit what the courts can do under the broad grant of authority to grant relief from the automatic stay and that could include future cases.  So I -- but it's a disputed issue.

But in any event, I don't think it was -- I don't recall a specific request for that in the motion for relief from the stay.  Was it there, Mr. McCarthy?

MR. McCARTHY:  It is.  It's a box that you check on the form, Your Honor.

THE COURT:  Ah, okay.

MR. McCARTHY:  And I did --

THE COURT:  Okay.

MR. McCARTHY:  And I did explain in the memorandum why we wanted it for the reason I just said.

THE COURT:  Well, this is the problem with continuing the matter.  I -- my memory faded there and I didn't remember that aspect.

P 888.272.0022  F 818.343.7119        BENHYATT    www.benhyatt.com
Certified Deposition Reporters

So it was requested, but I just -- I don't feel comfortable doing it on this record.  I will say one of the nice things in my view about the procedures in bankruptcy is that you can ask for expedited relief and you can have matters decided in a fairly flexible basis.

And so if it were to be that there were future bankruptcy filings, Mr. McCarthy, you and your client could probably get before me pretty quickly and easily.

MR. McCARTHY:  Thank you.

THE COURT:  Okay.  Anything else, Mr. McCarthy?

MR. McCARTHY:  Not from me, Your Honor, thank you.

THE COURT:  Okay.  And Mr. Ortiz?

MR. ORTIZ:  Thank you, Your Honor.  Kyle Ortiz of Togut Segal & Segal, for the foreign representatives.

Just wanted to give you two case updates generally.  There -- as you may remember from some of the earlier pleadings, there's in addition to what's happening in the United States, what's happening in New Jersey, there was a proceeding in Manchester and the foreign representatives did get recognition of the Jersey proceedings in Manchester.  And those were proceedings where Mr. Itkin was seeking orders declaring the New Albion shares are lawfully his and the guarantee is effective and enforceable.

21

That was been now stayed.  So we kind of have a stay in both the United States and in Manchester.  Things are focused on Jersey, although the main event in Jersey right now, Your Honor, is that Mr. Itkin did bring proceeding to remove the liquidators and that will be heard.  I believe the hearing is set for January 13th, so obviously after that date we will give Your Honor an update if there's a change in the nature of who the liquidators are.

And I would note, just as a point of information, that part of the argument in connection with removal of liquidator was the same arguments Your Honor has seen about Mr. Garrood potentially being conflicted.  Although the liquidators do not believe in any way that he is conflicted, they determined just to kind of put the issue off the table so they relieved him of his services and they hired a new counsel to represent them in Jersey.

So those are just the general case updates we wanted to provide Your Honor.  Obviously, as proceedings continue in Jersey and we have things that require recognition, we'll be back before you.

THE COURT:  Okay.  So I think we need to address -- I -- you know from -- I think you know from my ruling that partly I'm continuing things.  So I am ruling that the automatic stay does not apply to certain matters

and I'm -- but I'm also -- as to other matters, I'm continuing things in view of the need for a breathing spell, the need to get books and records, the need in this instance now with the update to have a chance to determine whether the foreign representatives are going to be replaced or not.

So it seems to me that some sort of a continuance is necessary. The parties talked about two different possibilities. Mr. McCarthy had talked about if I were going to do a continuance he wanted a date in early December. Mr. Ortiz has suggested, I think it was February -- late February. I think -- Mr. Ortiz, you had mentioned that this hearing on removal of the liquidators is in mid-January, was it, mid to late January?

MR. McCARTHY: Yes, January 13th, Your Honor.

THE COURT: Okay. Well, so I'm thinking I'll continue these matters to -- let's see -- February 7 and that would be at -- I would be inclined to do it at 2:00 p.m., but I'm flexible about whether it -- well, 1:00 p.m. I'm perfectly happy to do. Other times are a little less convenient, but we could put it on the 10:00 a.m. or 11:00 a.m. calendar.

So Mr. Ortiz, I'll start with you. Any objection to a continuance to February 7 at 2:00 p.m.?

MR. ORTIZ: No, Your Honor. I don't think we

have anything scheduled yet for February 7th, so that should be fine.

THE COURT:  Okay.  And Mr. McCarthy?

MR. McCARTHY:  Your Honor, that's fine with me but now I do have a request on clarifying the order that I should submit.  It sounds like what I should submit as an order in the state court action confirming that the stay doesn't apply to the affirmative claim for the three plaintiffs I identified.  And should I reflect otherwise that the motions are being continued for all other purposes?

THE COURT:  Correct.

MR. McCARTHY:  Okay.  All right.  Thank you.

THE COURT:  Okay.  And I think it would be helpful to me to have a status report a week in advance.  Actually, two weeks would probably be better.  How about a status report on Thursday, the 26th of January?  Any problem with doing that?  I would imagine a joint status report, but you can obviously include different sections in which you disagree, if you want.

Mr. McCarthy, any problem with that?

MR. McCARTHY:  That's fine, Your Honor.  But I don't envision doing that on the Court's form joint status report.  It would be one on a pleading.

THE COURT:  I agree and it can be as brief as no

change, period, or, you know, don't make it tremendously lengthy, but the point here is to try to make things efficient so that I have enough information that we don't spend time at the hearing going over things that would have been more efficiently handled by filing something in advance.  So if there's nothing to report, you can just say nothing to report, but if there's something that would help, then please address that.

Mr. Ortiz?

MR. ORTIZ:  That's fine, Your Honor.  I just would want to note one thing on the order.  I just am a little concerned about the order just saying that things are continued without at least what the tentative ruling was, particularly when we're going back to potentially to the state court to say that, you know, these things may be inextricably intertwined.  I don't want to give the impression that, you know, there wasn't any sort of leaning on the stay.  So I just wanted to mention that in connection with the order.

But with regard to the status report, that's perfect fine, Your Honor.

THE COURT:  All right.  So going to your first point, I think the order can say that the automatic stay applies under 362(a)(3) as to everything except the claims that Mr. McCarthy mentioned the ones by FB Trading, M-BJEP

P 888.272.0022  F 818.343.7119      BENHYATT  www.benhyatt.com
Certified Deposition Reporters

25

and M-NICE, N-I-C-E.  So the -- and then as to 362(a)(1) I'm trying to think -- I hadn't thought this through, but I -- does 362(a)(1) apply as to the claim for dissolution of the partnership and -- or any other claims against the debtor?

Well, let's see.  We've got -- we've got a counterclaim.

MR. ORTIZ:  You know, the claim for dissolution of the partnership, Your Honor, was the counterclaim by Itkin.  That's the one that you said clearly the stay applies to.

THE COURT:  Well --

MR. ORTIZ:  I think that --

THE COURT:  Yeah, it applies as -- under 362(a)(3), but as to 362(a)(1) was that a claim against the debtor or was it a claim -- or is it a claim against Mr. Sabadash?  I'm just taking a look here --

MR. McCARTHY:  Your Honor -- Dan McCarthy.  It's a claim to dissolve a partnership with Mr. Sabadash, an alleged partnership.  And the argument I understood the foreign representatives to make was that it implicated assets of the estate because one of the potential assets of the partnership were the New Albion shares, which own the Beverly Hills property, so I think it's a 362(a)(3) issue.

THE COURT:  Well, now, let's see.  362(a)(1)

talks about a claim against the debtor that arose before the commencement of the case, but a claim against the debtor includes a claim against property of the debtor, but under Section 102(2). And so I think Mr. Itkin's claims -- if I understand right, Mr. Itkin has asserted that in exchange for monies that were owed to him there was a transfer of the ownership of New Albion to him. And that's an exchange for his claims against the debtor and the response -- one of the responses that the debtor had previously made and that the foreign representatives now have to assess is whether the purported transfer was, in fact, effective and in which event there's still a claim against the debtor that wasn't satisfied by the transfer of the New Albion Property Limited or maybe there's no claim.

And so I think there are enough issues there that involve claims against the debtor, some -- maybe contingent, maybe disputed and unliquidated, but there are claims against the debtor involved. So I think 362(a)(1) applies to the -- insofar as the Exhibit A to docket 48, the verified second amended complaint by the debtor and others involving alleged breach of fiduciary duty and so on. So again, that's limited to the debtor not -- and to New Albion Property Limited, not as to the other three entities.

As to the dissolution of partnership cross-

 

27

complaint that, it seems to me, I don't think that does come under 362(a)(1) and when it comes to money hadn't received and setoff, frankly I've forgotten.  Were those claims against the debtor or not?

MR. McCARTHY:  Those were the debtor's claims against Mr. Itkin.

THE COURT:  Right.

MR. McCARTHY:  By way of counterclaim.

THE COURT:  Right.  Okay.  So those are claims by the debtor, not against the debtor, so 362(a)(1) would not apply to those claims.  And the recognition of foreign judgment I think that would also only be stayed under 362(a)(3), not 362(a)(1) because they -- the foreign judgment was for -- now remind me.  The foreign judgment, what was the --

MR. McCARTHY:  It was for 505,000 pounds.  And so by asking that it be recognized here in the U.S. against the debtor --

THE COURT:  Oh, that would be a claim against the debtor, yes.

MR. McCARTHY:  -- I would think that would -- yeah, that's an (a)(1) claim, yeah.

THE COURT:  Okay.  All right.

MR. McCARTHY:  And, Your Honor, can I ask for one thing?  I may have misheard you.  The affirmative claims by

 

the debtor in New Albion Partners under the second amended complaint, I thought I heard you say those were -- or I need just to clarify it.  Are those stayed under 363 -- 362(a)(3)?

THE COURT:  Yes.

MR. McCARTHY:  Yes, okay.

THE COURT:  But not (a)(1).

MR. McCARTHY:  Not (a)(1).  Okay.  Your Honor, I'll draft orders on this and run them by Mr. Ortiz.  Would you prefer that we use the form order, mandatory form order for these?

THE COURT:  Take a look at the mandatory form order and see if there are provisions that -- some of the boilerplate in there can be useful language to have, but you can depart from the local form.  I think this is a distinctive enough case that it warrants departing from the local form.  And then --

MR. McCARTHY:  Thank you.

THE COURT:  -- it should be for the reasons stated on the record the findings of fact and conclusions of law at the previous hearing, the one on October 11, and also today.

And then if I didn't make it clear already, I haven't gone through on the record each of the -- what's called the Plumber X factors or the Curtis factors, but

there's authority that those are guidelines.  They're not set in stone.  Some of them are inapplicable, in any event, things like whether there's a bailment or not.  That's not at issue I don't think in this case.

So I have -- I don't have it on this computer, but I was -- I have pulled up the factors and I've looked through those and I'm -- it's supposed to be a totality of the circumstances analysis anyway.  And so that's relevant to the fact that on the issues where I think the stay applies, I'm continuing this rather than granting a termination of the stay or letting the litigation -- the non-bankruptcy litigation go forward at this point.  So I wanted to be clear that that factors into my thinking as well if I hadn't already made that clear.

Okay.  I think that's now everything and I will look forward to seeing your joint report on January 26, '23 and seeing you at the hearing on February 7, '23 at 2:00 p.m.  In the meanwhile, I'll look forward to your proposed order.

Oh, and I always say this.  If -- Mr. McCarthy, you should prepare the order.

But, Mr. Ortiz, if you object to the form of order, which Mr. McCarthy should run by you and meet-and-confer before lodging it, but if Mr. Ortiz objects to the form of order, if you have differences you can't resolve,

call chambers and let us know right away because my staff and I tend to turn the orders around pretty quickly.  And so you'll get voicemail in all likelihood, but that will go directly to my law clerks.  It generates an email that sends a voicemail message to the law clerks and we'll know to hold off on any order until we get a -- until a little bit of time for you to lodge an alternate proposed form. So I don't know that that will be necessary, but that's just the procedure before me.

MR. ORTIZ:  Yes.  Thank you for letting us know, Your Honor.  I will note, you know, we worked collaboratively with Mr. McCarthy on the last order and I'm hopeful that we'll be able to do the same here.

THE COURT:  Okay.  All right.  Thank you both.

MR. McCARTHY:   thank you, Your Honor.

THE COURT:  You're welcome.

MR. ORTIZ:  Thank you, Your Honor.

THE COURT:  All right.

(End at 2:13 p.m.)

* * * * * *

 

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Ruth Ann Hager*

_____          Date:   11/18/2022

RUTH ANN HAGER, C.E.T.**D-641

P 888.272.0022  F 818.343.7119          BENHYATT
Certified Deposition Reporters          www.benhyatt.com