**FILED & ENTERED**

APR 09 2024

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** ghaltchi **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Golden Sphinx Limited,<br><br>Debtor. | Case No.: 2:22-bk-14320-NB<br><br>Chapter: 15<br><br>**NOTICE OF UPDATED FORM OF DRAFT CORRESPONDENCE WITH THE ROYAL COURT OF JERSEY**<br><br>Prior Hearing:<br>Date: March 12, 2024<br>Time: 2:00 p.m.<br><br>Continued Hearing:<br>Date: April 9, 2024<br>Time: 2:00 p.m.<br><br>Place: Courtroom 1545<br>255 E. Temple Street<br>Los Angeles, CA 90012<br>(or via ZoomGov per posted procedures) |

At the Prior Hearing set forth above, this Bankruptcy Court reviewed with the parties the form of proposed correspondence requesting information and assistance from the Royal Court of Jersey (the "Royal Court") as to how this Court should proceed on two motions for relief from the automatic stay (dkt. 48–49, the "R/S Motions") filed by Mr. Garry Y. Itkin. Attached hereto as **Exhibit A** is an updated form of draft correspondence, which Mr. Itkin and the Foreign Representatives should be prepared to

-1-

address very briefly at the above-captioned Continued Hearing. The point of this matter is not to re-argue prior issues, but instead only to see if there are any typographical or similar errors before issuing an order directing the parties to deliver the correspondence to the Royal Court.

###

Date: April 9, 2024

Neil W. Bason
United States Bankruptcy Judge

# EXHIBIT A



CHAMBERS OF THE HON. NEIL W. BASON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

**[DRAFT – Date to be inserted when finalized]**

Royal Court of Jersey
Samedi Division
Royal Court House
Royal Square, St. Helier, Jersey JE1 1JG
United Kingdom

      *Re: Creditors' winding up of Golden Sphinx Limited (Company No. 78090) (pending in the Royal Court of Jersey, Samedi Division, Court Ref. 2021/149); Golden Sphinx Limited (U.S. Bankruptcy Court, Central District of California, Case No. 2:22-bk-14320-NB)*

To The Honorable Bailiff or other appropriate Judicial Officer:

      I am writing to you in my capacity as a United States Bankruptcy Judge for the Central District of California, Los Angeles Division (the "Bankruptcy Court") regarding the creditors' winding up of Golden Sphinx Limited ("Golden Sphinx"), which is proceeding under the supervision of the Royal Court of Jersey (the "Royal Court").  I seek to assist you in your duties, and obtain your assistance in carrying out my own duties, regarding the financial administration of Golden Sphinx.

**1. Summary**

      This Bankruptcy Court would greatly appreciate information about whether it would aid or hinder the Royal Court's adjudication and administration of the matters before it if this Bankruptcy Court were to grant full relief, partial relief, or no relief at this time from the automatic stay of Title 11 (the "Bankruptcy Code") of the United States Code ("U.S.C.") section 362(a).  That question arises because one of the parties who has appeared before this Bankruptcy Court – Mr. Garry Y. Itkin – has filed motions seeking relief from the automatic stay to pursue litigation against Golden Sphinx, Aleksandr Vitalievich Sabadash, New Albion Property Limited ("New Albion"), and other entities in two separate actions pending in this locality (the "California Actions") and to permit affirmative claims of Golden Sphinx and New Albion to proceed.

  This Bankruptcy Court is aware that, on February 7, 2024, the Royal Court heard an application by Golden Sphinx, in which it sought to amend the Royal Court's Order of Justice to consolidate all of Golden Sphinx's claims against Mr. Itkin in Jersey.  This Bankruptcy Court understands that the Royal Court has assumed jurisdiction over the claims currently advanced by Golden Sphinx, without prejudice to any applications Mr. Itkin might make.  As described in greater detail below, however, not all claims at issue have been asserted by Golden Sphinx.

  Permitting the California Actions to proceed with respect to some claims might aid the furtherance of proceedings related to Golden Sphinx in the Royal Court or in this Bankruptcy Court.  For example, perhaps the continued prosecution of some claims in the California Actions would be the most efficient and/or appropriate way to gather and liquidate assets to pay creditors, or to establish which of the parties to those actions have viable claims against which other parties, or to determine the net amount of dollars or pounds sterling owed to or from each party.

  On the other hand, permitting the continued prosecution of some claims in the California Actions might impair the proceedings between Golden Sphinx and Mr. Itkin which are before the Royal Court or in this Bankruptcy Court.  For example, perhaps it would be more efficient or appropriate for some claims to be determined in the proceedings before you, rather than in the California Actions, or to otherwise remain stayed, due to the risk of unduly multiplying parties' litigation expenses, or the risk of inconsistent findings of fact, conclusions of law, or judgments, or for some other reason.  For example, and as noted below, New Albion has asserted several of the non-Golden Sphinx claims against Mr. Itkin, but the rightful ownership of New Albion as between Golden Sphinx and Mr. Itkin is among the disputes over which the Jersey Court has assumed jurisdiction, without prejudice to any applications Mr. Itkin might make.

  It may also be that the Royal Court considers it has or has not already determined some or all of the foregoing issues by allowing Golden Sphinx to amend its Order of Justice.

  All of these matters might or might not be affected by litigation involving Mr. Aleksandr Vitalievich Sabadash.  Mr. Itkin and Golden Sphinx dispute whether Mr. Sabadash has any direct or indirect interest in Golden Sphinx (see section 4.b., below, for a further discussion of this dispute).  Among other things, insolvency proceedings have been commenced against Mr. Sabadash in Russia, and recently a petition has been filed in this Bankruptcy Court seeking recognition of those insolvency proceedings.  *See In re Sabadash,* Bankr. C.D. Cal., Case No. 2:23-bk-15574-NB.  The extent to which these proceedings may overlap (if at all) with the California Actions and the proceedings before the Royal Court is unclear.

## 2. This Bankruptcy Court's authority to request information and assistance from the Royal Court

On August 9, 2022, Andrew Wood and Alexander Adam, in their capacities as the joint liquidators of Golden Sphinx (the "Joint Liquidators"), filed a petition for recognition of a foreign proceeding under Chapter 15 of the Bankruptcy Code (11 U.S.C. § 1501 *et seq*.).  On September 9, 2022, this Bankruptcy Court entered an order recognizing the liquidation proceedings of Golden Sphinx (the "Jersey Liquidation") that are proceeding under the supervision of the Royal Court (the "Recognition Order," dkt. 42)[1] as a "foreign main proceeding."  Briefly stated, a "foreign main proceeding" is a collective reorganization or liquidation proceeding pending in, and under the insolvency or adjustment of debt law of, a country in which a debtor has its center of main interests.  *See* 11 U.S.C. §§ 101(23) and 1502(4).

Chapter 15 is the codification of the U.S. adoption of the Model Law on Cross-Border Insolvency, promulgated by the United Nations Commission on International Trade.  Its purpose is:

> to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of –
> (1) cooperation between –
>    (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>    (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
> (2) greater legal certainty for trade and investment;
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> (4) protection and maximization of the value of the debtor's assets; and
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.
> [11 U.S.C. § 1501(a).]

In furtherance of the Chapter 15 case, and as this Bankruptcy Court has previously ruled, deference to the Royal Court, which is the center of main interest court, is appropriate.  Dkt. 54 at p. 4:18–21 (transcript of October 11, 2022 hearing).  A Chapter 15 case is therefore a proceeding ancillary to a foreign main proceeding, and it

---

[1] References to documents filed with this Bankruptcy Court and entered on the official docket are abbreviated "dkt."  This Bankruptcy Court has ordered Mr. Itkin, subject to the Royal Court's directions, to furnish the Royal Court with copies of all documents that would be helpful to the Royal Court in connection with this letter.  In addition, this letter generally tracks the terminology used by the parties, but this letter does not distinguish between federal and state terminology (*e.g.,* as used herein, "cause of action" and "claim for relief" are equivalent, as are "cross-claim" and "counterclaim").

provides a procedural mechanism through which orders issued in the foreign main proceeding may be given effect within the territorial jurisdiction of the United States.

To facilitate cross-border cooperation, Chapter 15 authorizes this Bankruptcy Court to "<u>communicate directly with, or to request information or assistance directly from, a foreign court</u> or a foreign representative, subject to the rights of a party in interest to notice and participation." 11 U.S.C. § 1525(b) (emphasis added). This Bankruptcy Court would benefit from the perspective of the Royal Court as to the automatic stay issues that have arisen in Golden Sphinx's Chapter 15 case.[2]

## 3. Scope of the automatic stay

Upon entry of the Recognition Order, the automatic stay of 11 U.S.C. § 362(a) came into effect with respect to Golden Sphinx and any of Golden Sphinx's property located within the territorial jurisdiction of the United States (referred to herein for convenience as "property of the estate" or "property of the debtor"). 11 U.S.C. § 1520(a)(1); *cf. In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 n. 48 (Bankr. C.D. Cal. 2008) (discussing proper terminology). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (citation omitted).

The automatic stay is "extremely broad in scope and should apply to almost any type of formal or informal action against the debtor or the property of the estate." *Delpit v. Comm'r*, 18 F.3d 768, 771 (9th Cir. 1994) (citation omitted; cleaned up). Among other things, the stay prohibits any entities (A) from pursuing litigation against Golden Sphinx (11 U.S.C. § 362(a)(1)) and (B) from attempting to exercise control over property of Golden Sphinx's bankruptcy estate (11 U.S.C. § 362(a)(3)), absent an order of this Bankruptcy Court granting relief from the automatic stay.[3]

---

[2] Both Mr. Itkin and the joint administrators appointed by the Royal Court have been provided with an earlier draft of this letter and an opportunity to provide input on its contents.

[3] The automatic stay "operates as a stay, applicable to all entities," of:
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
   (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court

## 4. Mr. Itkin's motions for relief from the automatic stay

On September 16, 2022 Mr. Itkin filed motions (dkt. 48–49) requesting rulings from this Bankruptcy Court regarding the scope of the automatic stay and relief from that stay, to the extent needed for him to continue to pursue litigation involving Golden Sphinx in the California Actions. Those actions consist of: (A) *Itkin v. Golden Sphinx Ltd.,* in the U.S. District Court for the Central District of California, Case No. 2:21-cv-04907-JAK (the "District Court Action") and (B) *AFB Trading One, Inc. et al. v. Garry Y. Itkin et al.*, in the Superior Court of the State of California for the County of Los Angeles, Case No. BC647351 (the "State Court Action").

As to the District Court Action, this Bankruptcy Court issued an order (dkt. 71) ruling that all proceedings were stayed pursuant to 11 U.S.C. § 362(a)(1) and 362(a)(3). As to the State Court Action, this Bankruptcy Court issued an order (dkt. 70) ruling that only some causes of action were stayed (by § 362(a)(3)); but at a hearing on September 7, 2023, the parties reported that the State Court had elected, at least for now, to stay the entirety of the State Court Action. Dkt. 110 at p. 2:7–9. In other words, at present the California Actions are stayed in their entirety.

### a. The nature of the District Court Action

The only parties involved in the District Court Action are Golden Sphinx and Mr. Itkin. The only relief sought by Mr. Itkin in the District Court Action is to obtain recognition in the United States of a judgment entered against Golden Sphinx by the Royal Court in 2016 (the "Judgment") pursuant to California Code of Civil Procedure § 1473 *et seq*. Dkt. 49, Ex. A. Golden Sphinx filed a counterclaim in the District Court Action in which it alleged affirmative claims against Mr. Itkin for setoff and recoupment against Mr. Itkin's judgment, for unjust enrichment, and for monies had and received. *Id.*, Ex. B. The claims and counterclaims in that action appear to be based primarily, if not solely, upon California law. All pretrial discovery and other deadlines had passed in the District Court Action, and Mr. Itkin and Golden Sphinx had pending motions against each other, when Golden Sphinx's Chapter 15 bankruptcy case was filed with this Court on August 9, 2022. Dkt. 49 (Atabek Decl.) at ¶¶ 3–4 and Ex. C.

This Bankruptcy Court understands, however, that Mr. Itkin's Judgment is also alleged by Golden Sphinx to have been wrongfully obtained, and that Golden Sphinx seeks to have the Judgment set aside on that basis. *See* Am. Order of Justice (dkt. 128, Ex. B) at ¶ 27B and pp. 23–24.

This Bankruptcy Court anticipates that if Mr. Itkin's Judgment is recognized and if Golden Sphinx does not prevail on its counterclaims against Mr. Itkin, then the next step would be enforcement of that Judgment, either within the District Court Action or in separate proceedings, but first it would be necessary for this Court to also grant relief from the automatic stay to permit enforcement. Such enforcement could affect the

---

may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title. [11 U.S.C. § 362(a)(1)–(8).]

property of Golden Sphinx's estate currently subject to the Jersey Liquidation, including tangible property and intangible property such as legal claims.

### b. The nature of the State Court Action

Golden Sphinx and four other entities (New Albion, AFB Trading One, Inc. ("AFB Trading"), M-BJEP Limited ("M-BJEP"), and M-Nice Limited ("M-Nice")) filed the State Court Action against Mr. Itkin and other entities on April 5, 2017. Dkt. 48, Ex. A. Among other things, plaintiffs' operative Second Amended Complaint in the State Court Action alleges that Mr. Itkin abused his position as a fiduciary to misappropriate to himself significant assets directly or indirectly owned by Golden Sphinx and AFB Trading.

According to those plaintiffs, the tactics employed by Mr. Itkin to accomplish the alleged misappropriation included wrongfully transferring to himself shares in New Albion, an entity that historically has been wholly-owned by Golden Sphinx. *See* 2d Am. Complaint (dkt. 48, Ex. A) at ¶ 45. New Albion's sole material asset is a residence located in Beverly Hills, California (the "Beverly Hills Property"). *Id.* at ¶¶ 12 & 46–47. The Joint Liquidators have represented to this Bankruptcy Court that the Beverly Hills Property is worth approximately $45 million. Dkt. 50 at p. 3. n.1. Golden Sphinx alleges that Mr. Itkin wrongfully concealed his acquisition of New Albion and the imposition of a mortgage against the Beverly Hills Property.

On March 1, 2018 Mr. Itkin and New Albion (in its capacity as an entity purportedly owned and controlled by Mr. Itkin) filed their most recently amended cross-complaint (Second Amended Cross-Complaint) against certain of the plaintiffs in the State Court Action, including Mr. Sabadash. Dkt. 48, Ex. B. The Cross-Complaint does not assert claims against Golden Sphinx. Among other things, the Cross-Complaint seeks the dissolution and winding up of an alleged partnership (the "Alleged Partnership") between Mr. Itkin and Mr. Sabadash. 2d Am. Cross-Complaint (dkt. 48, Ex. B) at ¶¶ 18–120.

The claims and cross-claims in the State Court Action appear to be based primarily upon California law – although those claims may also implicate the law of Jersey (where Golden Sphinx is incorporated) and England (where New Albion is incorporated). All discovery and pretrial deadlines passed in the State Court Action, and trial actually commenced in that action in March 2020, but a mistrial was declared due to Covid-19. Trial was scheduled to commence again on November 14, 2022, but was stayed due to Golden Sphinx's Chapter 15 case. Dkt. 48 (Atabek Decl.) at ¶¶ 3 and 5.

### c. This Bankruptcy Court's rulings as to the scope of the automatic stay

On March 16, 2023, after a series of hearings (*see* dkt. 54, 57, 83) this Bankruptcy Court entered orders that the automatic stay applies to all of the District Court Action and part of the State Court Action (as noted above). As to the latter, this

Bankruptcy Court ruled that, even though Mr. Itkin's Cross-Complaint asserted claims against Mr. Sabadash and not Golden Sphinx, the automatic stay arising in Golden Sphinx's chapter 15 case nonetheless applied to Mr. Itkin's first cause of action for dissolution and winding up of the Alleged Partnership and third cause of action for breach of fiduciary duty.  Dkt. 70 at ¶¶ 3–4.  In so ruling, this Court reasoned that any acts to prosecute the Cross-Complaint's first and third causes of action are stayed by 11 U.S.C. § 362(a)(3) as acts to obtain "possession" or "control" over property of Golden Sphinx's estate, including its claim to an interest in New Albion and, through it, the Beverly Hills Property.  Dkt. 57 at pp. 4:22–9:6 (transcript of November 15, 2022 hearing).

For similar reasons, this Bankruptcy Court determined that the automatic stay applied to the claims asserted by New Albion (in its capacity as an entity purportedly owned and controlled by Golden Sphinx).  *See* dkt. 70 at ¶ 2, *and* dkt. 57 at pp. 7:22–8:4 (transcript of November 17, 2022 hearing).  In that regard, it is significant that New Albion (again in its capacity as an entity purportedly owned and controlled by Golden Sphinx) alleges that Mr. Itkin is <u>not</u> an officer or director of New Albion and that a mortgage recorded against the Beverly Hills Property that is New Albion's sole material asset is invalid.  *See* 2d Am. Complaint (dkt. 48, Ex. A) at ¶¶ 123–130.

Finally, regarding the scope of the stay, this Bankruptcy Court determined that the automatic stay did <u>not</u> apply to proceedings on causes of action asserted in the Second Amended Complaint by other related entities: AFB Trading, M-BJEP, and M-Nice Limited.  Dkt. 70 at ¶ 5; *see also* dkt. 83 at pp. 4:23–10:22 (transcript of March 7, 2023 hearing, containing an explanation of why the claims of AFB, M-BJEP, and M-Nice were not stayed by 11 U.S.C. § 362(a)(3) even though the claims of New Albion were stayed by that section).  The differing treatment of the New Albion claims was a consequence of Golden Sphinx's assertion of an ownership interest in New Albion.  Without deciding whether New Albion was in fact owned by Golden Sphinx, this Court reasoned that even Golden Sphinx's claim to ownership of New Albion was sufficient to place New Albion under the protection of the automatic stay, such that the continued prosecution of New Albion's claims would constitute an attempt to "exercise control over" property (claims) belonging to Golden Sphinx's estate in violation of 11 U.S.C. § 362(a)(3).

**5. Whether to grant relief from the automatic stay**

Upon a showing of "cause," this Bankruptcy Court is required to grant relief from the automatic stay.  11 U.S.C. § 362(d)(1).  "'Cause' has no clear definition and is determined on a case-by-case basis."  *In re Tucson Estates., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  A variety of factors are considered in determining whether "cause" exists to grant relief from the automatic stay.  *See, e.g., In re Kronemeyer*, 405 B.R. 915 (9th Cir. BAP 2009); *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559–60 (Bankr. C.D. Cal. 2004).

In addition, the granting of relief from the automatic stay need not take the form of a complete termination of the automatic stay, but instead may include "modifying … or conditioning such stay." 11 U.S.C. § 362(d)(1). Section 362 provides this Court with substantial flexibility "to fashion the relief to the particular circumstances of the case." 3 *Collier on Bankruptcy* ¶ 362.07 (16th rev'd ed. 2023).

This Bankruptcy Court has ruled that it is appropriate for the automatic stay to remain in effect at the present time, with respect to both of the California Actions, so as to afford the Joint Liquidators appointed in the Royal Court proceedings sufficient time to analyze the facts and the legal issues, seek and obtain rulings from the Royal Court, and then act in accordance with such rulings. *See, e.g.*, dkt. 54 at p. 11:17–22 ("I'm inclined to accord [a] limited amount of time for a breathing spell for the foreign liquidators to wrap their arms around this, both on the merits and in terms of the best use of their – of the resources within the estate they control to – to figure out what to do with this litigation") (transcript of October 27, 2022 hearing).

At a continued hearing on December 19, 2023 this Bankruptcy Court conducted a further hearing to again examine whether the automatic stay should continue to remain in effect. The oral ruling was that this Bankruptcy Court would use the procedures in Chapter 15 of the Bankruptcy Code to request the views of the Royal Court as to the benefits and detriments of granting any form of relief from the automatic stay with respect to the California Actions.

## 6. This Bankruptcy Court's specific requests for information or assistance from the Royal Court

The Royal Court's perspective as to the following issues would be of particular assistance to this Bankruptcy Court in determining the extent to which the automatic stay should remain in effect:

> (a) To what extent would further modifying, conditioning, terminating, or otherwise granting relief from the automatic stay as to either or both of the California Actions aid, interfere with, or otherwise affect the ability of the Joint Liquidators to discharge their obligations to creditors and other parties in interest, or the ability of the Royal Court to discharge its own duties, in the proceedings pending before it, particularly with respect to (i) New Albion's claims against Mr. Itkin in the State Court Action; (ii) Mr. Itkin's cross-claims in the State Court Action; (iii) Golden Sphinx's claims in the State Court Action; (iv) Mr. Itkin's claims in the District Court Action; and (v) Golden Sphinx's counterclaims in the District Court Action? As discussed above, this Court has substantial flexibility to tailor the scope of the automatic stay to the specific circumstances of this case. To give several nonexclusive examples, this Court could modify the automatic stay to permit adjudication of either or both the California Actions, but order that the stay remain in effect with respect to the enforcement of any judgment obtained in those actions. Alternatively, the stay could be modified such

that only certain aspects of either or both of the California Actions could be litigated (subject, of course, to the discretion of the courts presiding over those actions to control their own proceedings).

(b) This Bankruptcy Court is aware of the timetable contained within the Act of Court dated February 7, 2024, which provides for the filing and service of amended pleadings, and thereafter a stay of the Royal Court proceedings to allow for alternative dispute resolution.  In the event that the Royal Court would prefer for this Bankruptcy Court to deny or limit any further relief from the automatic stay, how long would the Royal Court prefer for the automatic stay to remain in effect?  For example, would it be most helpful for the automatic stay to remain in effect as to enforcement of any monetary judgments in the California Actions until the Royal Court has concluded its determinations in the proceedings before it, or would the Royal Court prefer that the automatic stay continue to apply indefinitely in all respects so as, for example, to permit the Royal Court to determine the claims before it (*see* Am. Order of Justice (dkt. 128, Ex. B))?  Likewise, what are the Royal Court's views regarding the duration of the automatic stay as to any injunctive relief in connection with enforcement of claims or declaratory relief as to the parties' rights that might be sought in the California Actions?

(c) Are there any other facts and circumstances regarding the proceedings before the Royal Court that this Court should be aware of when making its decision on whether to grant any further relief from the automatic stay?

Any assistance with respect to the matters set forth herein would be greatly appreciated.

Very truly yours,


Hon. Neil W. Bason
United States Bankruptcy Judge
Central District of California, Los Angeles Division

cc: [counsel for parties]